## DEADWYLER & COMPANY *v.* KAROW & FORRER.

1. A valuable consideration is essential to a sale; and if its ascertainment becomes impossible, there is no sale.   Where a contract is made for the sale, at a specified price per pound, of certain bales of cotton, even though there be a constructive delivery to the buyer, if the weights of the cotton be then unknown, and such weights, by which the amount of the purchase-price is to be determined, are by such contract to be ascertained by subsequent weighing by the buyer when actual delivery to him is made, and the cotton is destroyed by fire before being so delivered and weighed and it becomes impossible to ascertain such weights, there is no sale.

2. A custom which contravenes a positive statute is invalid, and does not become part of a contract.   If a part of a custom would be valid if it stood alone as a separate and independent custom, such part would be invalid when another part of the entire custom of which it forms a part was invalid, unless it is reasonably certain that to enforce the former as a separate and independent custom would correspond with the intent and purpose with which the custom, as a whole, was established and used.

Argued January 11,—Decided August 11, 1908.

Complaint.   Before Judge Cann.   Chatham superior court. June 26, 1907.

*Samuel H. Sibley* and *Alexander C. King,* for plaintiffs.

*Adams & Adams,* for defendants.

HOLDEN, J.   The plaintiffs brought suit against the defendants for the contract price of 100 bales of cotton alleged to have been sold by them to the defendants.   58 bales of the cotton were consumed by fire before there was any actual delivery.   After some correspondence between the parties, the remaining 42 bales were taken by the defendants, and a payment for the purpose of settling

the amount due for them was made, but which did not fully cover the principal and interest due; and the court, to whom the matter was submitted without the intervention of a jury, found in favor of the plaintiffs against the defendants for this balance, and found in favor of the defendants on the main issues in the case, the effect of which was to find that the plaintiffs were not entitled to recover the price of the cotton destroyed by fire. To this judgment the plaintiffs excepted. The following facts appear from the testimony: The plaintiffs were cotton factors and warehousemen in Athens, and the defendants were cotton dealers in Savannah, with a buyer located in Athens. There was evidence by the plaintiffs to show that there was in the Athens market, among cotton factors and warehousemen and buyers from them, the following custom: The factors would extract from each bale of cotton in their possession for sale a sample, in which was wrapped a tag on which was written the number and marks of the bale from which it was drawn, and to the bale was attached a duplicate tag having on it the same number and marks. This sample, with its enclosed tag, was taken to the sample-room and there kept for exhibition to and examination by prospective buyers. The bale in the warehouse represented by the sample could be positively identified by the duplicate tag attached thereto. When a buyer wished to purchase cotton, he would examine these samples and agree with the cotton factors on the price to be paid for each bale represented by the respective samples. It was also the custom of the market that when this agreement was made, and the samples, with the tags therein, delivered to the buyer, or left with the cotton factor to be sent for by the buyer, and the sale listed on the books of the cotton factor, such bales then became the property of the buyer and were held by the warehousemen thenceforth at his risk. It was a part of the custom that each bale was to be reweighed by a weigher representing the buyer, in the presence of the warehouse weigher, and the cotton settled for by the buyer at these reweights on the basis of the price per pound agreed upon when the samples were examined and the contract made. The buyer could waive the reweighing and take the cotton at the weights when first put into the warehouse, but the custom was to reweigh each bale bought. If any bale bought was "falsely packed," or damaged, or was "mixed packed," or failed to come up to the sample, the

buyer had the right to reject it. When the defects were not excessive, the seller would make good the defects by compromise or settlement of some kind. When the cotton was reweighed a bill therefor was made out according to such reweights and payment for the cotton made. Sometimes the buyer, at the request of the seller, would make a payment before the reweighing. The difference would then be paid when the cotton was reweighed. In this particular case, the buyer of the defendants located in Athens contracted to buy from the plaintiffs, at a price of 11 3/16 cents per pound on a basis of Athens middling grade, 100 bales of cotton from samples, on a Saturday afternoon. The samples, with the enclosed tags, were kept by the plaintiffs and placed in a basket in their office. On the books of the plaintiff these 100 bales were listed as having been sold to the defendants, and a duplicate list of the marks, numbers, and grades of the bales was made out, one for the scalesman and one for the warehouseman. The buyer, Mr. Butt, took the list and the number of each grade and went back to his office. This transaction occurred in the afternoon, after banking and business hours. Early the following morning all of the cotton was consumed by fire except the 42 bales above referred to. The samples were left in the office of the plaintiffs, subject to the order of the buyer. Prior to the fire the defendants' agent did not reweigh the cotton. Nothing was paid before the fire on the cotton bought. There was no express agreement about reweighing, or when the cotton was to be reweighed or delivered to the buyer, nor was there any express agreement about the time of payment. There was no testimony as to how long the 100 bales had been in the warehouse after being first weighed, nor was there any testimony as to whether or not the bales would come up to sample.

1. The plaintiffs in this case contend that they are entitled to recover the price of the 58 bales of cotton sold and consumed by fire. The 42 bales not destroyed were delivered to the defendants and paid for by them, except a small balance due as interest. Under the letters that passed between the parties, and the other facts in the case, the acceptance of these 42 bales and the payment therefor would not have the effect of making the defendants liable for the cotton burned. One of the contentions of the plaintiffs is that they are entitled to recover the price of the 58 bales burned, under the Civil Code, §3546, which is as follows: "Cot-

ton, corn, rice, crude turpentine, spirits turpentine, rosin, pitch, tar, and other products sold by planters and commission merchants on cash sale, shall not be considered as the property of the buyer until fully paid for, although it may have been delivered to the buyer: *Provided,* that in cases where the whole or any part of the property has been delivered to the buyer, the right of the seller to collect the purchase-money shall not be affected by its subsequent loss or destruction." The plaintiffs contend, that, outside of any custom, the proved facts immediately connected with this sale show a constructive delivery of the cotton, and that under the provisions contained in the latter part of the section just quoted they are entitled to recover the purchase-price of the cotton which was burned. They further contend that, even if the facts do not show there was a delivery, there was by custom a constructive delivery of the property to the buyer. It appears that at the time of the transaction between the parties the only thing *expressly* agreed upon was the price per pound, on a basis of middling grade, to be paid by the buyer for the bales of cotton represented by the samples and identified by the tags. Nothing whatever was said between the parties as to the weight of any bales. Under the custom testified to, the amount to be paid by the buyer for each bale was the price per pound agreed on, according to the weights when reweighed by the buyer; and it was customary for the buyer to have the cotton reweighed by his scalesman. Moreover, it was a part of the custom that when the cotton was reweighed and actually delivered, the buyer had the right to reject any bales "falsely packed," or "mixed packed," or damaged, or that did not come up to sample, and have the matter adjusted. If this was a proved and valid custom entering into the contract as a part thereof, the amount to be paid for each bale of cotton could not, according to the contract, be determined until there was a reweighing and acceptance by the buyer. If this custom was not proved, or, if proved, was not valid, and if all question as to the existence of such custom be ignored, it would still be true, under the facts of this case, that the amount to be paid by the buyer for the cotton contracted for could not be ascertained until the cotton was reweighed, as there was no agreement whatever in reference to the weight of any particular bale, though there was an agreement as to the price per pound to be paid for

each bale. Nothing was said by the seller or buyer as to weights, and no agreement was made by them as to what were the weights of the respective bales. The seller testified to the following: "After he received the cotton *as to grade* it was listed to L. F. Butt, *completing the sale as to marks, numbers and grades.* . . My recollection is that I put the samples in a basket after they were listed. The basket was left in the office, subject to his order. The tags still remained in the samples. . . I made an entry on the sales book, on Nov. 6, of 100 bales sold to L. F. Butt at a *certain price, certain basis.* On the occasion of entering the samples, I made a list of the *marks, numbers and grades.* My recollection is that there were duplicate lists, one for the scalesman and one for the warehouseman. I delivered and listed the samples. These entries were made a few minutes after the transaction, that is, after *delivery as to grade.* . . He came in and received the cotton, and took the list and number of *each grade* and got back to his office. . . I know it from agreements that existed by buyers voluntarily, when this cotton was *passed on as to grade.* . . *I understood* it was his cotton and *to be weighed out* to him as soon as he could reweigh it." A letter from L. F. Butt to the defendants was introduced in evidence, containing the following statement: "I accepted the cotton, and the only thing left to be done was to *reweigh cotton,* in order to make out correct bill." The entry on the delivery book of the plaintiffs was as follows: "Nov. 10, 1905. Sold to L. F. Butt, Agt.

| Marks. | No. | Wt. | Wt. |
|---|---|---|---|
| 1. ASH | 466 | 350 | |
| 2. " | 470 | 424" | |

and so on, covering the 100 bales, showing the original warehouse weight of the 100 bales in the first column marked "Wt.," and in the second column marked "Wt." the reweight of the 42 bales not burned, but it was blank in the second column as to the *weight* of those burned. Before the 42 bales not burned were taken and paid for, they were reweighed and settled for by the reweights. Where the price per pound is agreed upon by the buyer and seller, and there is no agreement between them as to the number of pounds in such bale, under the facts appearing in this case, it is proper to hold that the understanding was that the cotton would have to be reweighed in order to ascertain the amount

to be paid therefor. Such facts show an understanding between the parties as a part of the agreement that the buyer was to pay for the cotton a certain price per pound according to the number of pounds in the bales at the time of the consummation of the trade; and this number of pounds was to be ascertained by weighing each bale. Whether viewed from the standpoint of a custom, or from the law governing what occurred between the parties independent of custom, the amount to be paid by the buyer for the cotton bought was not determined before it was consumed by fire, and nothing appears in the record to show that after the fire it was possible to determine this amount as to the cotton burned. The amount to be paid would necessarily depend upon the number of pounds of cotton in each bale, and there is no way by which it can be determined from the record before us the number of pounds in any particular bale destroyed by the fire. If there was testimony from which it could be implied that the cotton was weighed when first brought to the warehouse, it does not appear when it was thus weighed and what would be the probable loss in weight, if any. Under the record before us, it would be impossible for the court to determine what was the amount of consideration to be paid by the buyer for the cotton which was burned; and where the consideration *becomes* impossible of ascertainment, *there is no sale,* under the provisions of the Civil Code, § 3548, which is as follows: "A valuable consideration is essential to a sale; it must either be definite, or an agreement made whereby it can be made certain; if its ascertainment becomes impossible, there is no sale." Where the consideration for the sale of property is to be determined by ascertaining its quantity, and meanwhile this is rendered impossible by reason of its destruction, there is a closely analogous instance to cases where the parties agree upon a sale of property, the value of which is to be fixed by a named third person who refuses to act, or dies before fixing such value. In such cases the sale fails, because the consideration becomes impossible of ascertainment. See, in this connection, *Elberton Hardware Co.* v. *Hawes,* 122 *Ga.* 858 (50 S. E. 964). We do not mean to intimate that in cases of the nature referred to, were the property before its destruction converted by the prospective purchaser, or its loss were to ensue from such negligence as would render him liable in his character of bailee independent

of any connection with the proposed sale, or if the delay in reweighing before the property was destroyed was the result of his negligence and in violation of his obligation to reweigh in a given or reasonable time, or under some other circumstances, an action could not be maintained by the seller of the property for the value of the property; but he could not recover on the contract as vendor of the property, there being in law no sale of such property where the consideration becomes impossible of ascertainment. Even if there was a valid contract to sell, and constructive or actual delivery of the cotton which was the subject thereof, there could be no recovery in this case under section 3546 of the Civil Code, because of the fact that there was no sale; as this section, together with sections 3545 and 3543, contemplates a sale. The provision in section 3546, that, when the property has been delivered to the buyer, the right of the seller to collect the purchase-price shall not be affected by its subsequent loss or destruction, follows provisions in that section in regard to a sale of the property referred to, and is based on the fact of there being a sale; and if there is no sale on which this provision is predicated, it would have no application. The provisions of this section have no application to this case, because under its facts there was no sale, either conditional or unconditional. The plaintiffs could not recover under section 3546, which provides that when property is sold and title is not to pass until the purchase-money is paid, the loss of the property without the vendee's fault before such payment falls on the owner. It is only under the latter part of section 3546 that the plaintiffs could recover the purchase-money where cotton is sold with title retained by law in the vendor until the purchase-money is paid, and it is destroyed after delivery to the vendee. The latter part of this section provides that when the cotton is delivered to the buyer and is destroyed, the right of the seller to collect the purchase-price is just the same as it would have been had the cotton not been destroyed. Under the facts of this case, the seller could not have collected the purchase-price if the cotton had not been destroyed until after it was reweighed, as it was sold at an agreed price per pound and it was to be weighed to ascertain the number of pounds. The purchase-price was not due and could not be known till the cotton was weighed. While the latter part of this section provides for the recovery of the pur-

chase-price, in such cases how can the purchase-price be recovered when it is impossible to ascertain what is the amount of it? There is no *purchase-price* when an effort is made to fix a *purchase-price* and this effort fails and it becomes impossible to ascertain it. There can be no recovery of a *purchase-price* of property when there is *no purchase-price* fixed, and, without the buyer's fault, it becomes impossible to ascertain it. There can no more be a recovery of the *purchase-price when there is no purchase-price* fixed, and it is impossible to ascertain it, than there could be a recovery of a bale of cotton when there was no such bale in existence as the one sought to be recovered, or, if in existence, it was impossible to identify it. Property can not be recovered which is not so described as to be capable of identification, nor can a purchase-price be recovered when it can not be ascertained what it is. This cotton was never actually delivered. The transaction occurred after banking and business hours on Saturday afternoon. In a letter from the plaintiffs to the buyer of the defendants they say: "Had the cotton been classed earlier in the day, it would have been actually turned out to you on Saturday afternoon; but on account of the lateness of the hour at which it was classed, it was not to have been turned out to you until Monday morning. In the meantime the fire occurred." Hence, it will be seen that it was not the buyer's fault that the cotton was not actually delivered and weighed before the fire occurred.

2. If the evidence in this case authorizes the conclusion that when there was an agreement between the buyer and cotton factor in the Athens market that the former should pay a certain price per pound for a bale of cotton represented by a sample, and the sample was actually or constructively delivered to the buyer, but there was no agreement as to the number of pounds in the bale, and the number of pounds was not definitely known at the time, but was to be determined by subsequent weighing when the cotton was actually delivered, a custom existed in such market that the property became the property of the buyer and was held by the warehouseman at the risk of the buyer, such custom would be invalid if the cotton was destroyed before the weights were known and it was impossible to ascertain such weights, thereby making it impossible to determine the consideration to be paid by the buyer for the cotton. In such a case, as shown in the previous

division of this opinion, there would be no sale; and a custom to the effect that there was a sale and that the property became the property of the buyer would contravene this positive statute (section 3548) and would be invalid. Such custom that the cotton became the property of the buyer would also contravene the provisions of section 3546, which says that in sales of this kind the title to the property sold remains in the seller until the purchase-money is paid. A custom contravening a positive statute is invalid. It does not become a part of a contract. *Fleming* v. *King*, 100 *Ga.* 449 (28 S. E. 239). If there be a custom that in cases like the one above named any loss of the property by fire before reweighing and actual delivery would fall on the buyer, such custom would be invalid; for it is predicated on the other custom that the title to the property passes to the buyer under such circumstances, which is invalid for the reasons above stated. The custom that the ownership and risk passed to the buyer seems to be one entire custom and that the risk followed ownership. This would seem to be a proper construction of the testimony, a part of which is as follows: "Under the customs of the Athens market in November, 1905, it was understood that anything designating a specific number of bales of cotton as being the cotton sold passed the title to the buyer. . . As between warehouseman and buyer, it was considered the buyer's cotton so that he should insure it, according to my understanding at that time. . . I was not in the cotton business in November, 1905, but prior to that time under the customs existing the title and ownership of the cotton passed when samples of the cotton were received from the seller by classification and grade. . . When cotton was delivered to them it was at their risk so soon as ownership could be proven. . . Under the customs of said market, after the cotton had been agreed on and entered up on the books as sold as above, the cotton was regarded as at the buyer's risk. . . It was regarded in said market at the time in question as transferring the ownership and risk of the cotton from the seller to the buyer. . . Under the customs of the Athens market, after my transaction with Mr. Butt the cotton and the risk were Mr. Butt's." It appears that the destruction of cotton by fire under the circumstances of this case had never at any previous time occurred in Athens. However, if such custom that any loss of the cotton by

fire would fall upon the buyer were not invalid for any other reason, would it not be invalid for the reason that it was uncertain and indefinite in its terms? The loss feature of the alleged custom is its chief feature; and·can it be told under the facts whether the loss is to be the value of the cotton, or its contract price, and, if either, whether it is to be computed from first weights, or on a basis of probable loss in first weights? The testimony shows that there may be a loss from first weights; but there is no testimony showing usual or probable loss, or when the cotton was first weighed.

The custom that the cotton was held at the risk of the buyer was interwoven with and predicated on the understanding that by the working of the entire custom prevailing a sale was accomplished, carrying with it both title and risk of loss to the purchaser. When a valid custom exists, and the parties contract with reference thereto, the custom affects the contract in the same manner as would a statute which contained a written law applying to such contract the same incidents which the custom attaches thereto; and in determining whether a part only of a custom shall be enforced, we are to be guided by the rule which obtains with respect to a statute a part of which is found to be invalid. The rule in such instances is announced by Chief Justice Simmons, in *Elliott* v. *State,* 91 *Ga.* 694 (17 S. E. 1004), as follows: "When a statute can not be sustained as a whole, the courts will uphold it in part when it is reasonably certain that to do so will correspond with the main purpose which the legislature sought to accomplish by its enactment, if, after the objectionable part is stricken, enough remains to accomplish that purpose. But if the objectionable part is so connected with the general scope of the statute that, should it be stricken out, effect can not be given to the legislative intent, the rest of the statute must fall with it. The courts can not construct from a defective statute a law which the lawmaking body did not intend to enact and which it can not be presumed it would have been willing to enact. See Cooley's Const. Lim. (6th ed.) 209 et seq.; Sutherland, Stat. Constr. §§169-180; Baldwin *v.* Franks, 120 U. S. 678 [7 Sup. Ct. 656, 32 L. ed. 766], and cases cited." The central idea of the custom invoked in the present case is that risk follows ownership, and this accords with the general policy of the law. These observa-

tions in reference to custom as affecting the rights of the parties are made without reference to the provisions of section 3546, which provides that the seller may recover the *purchase-price* when property is delivered to him, though under such section he gets no title thereto. We have shown under the preceding division of this opinion that there could be no recovery under that section. We can not say that the parties establishing and using a custom that the risk was with the buyer would have done so but for the custom existing with it that the ownership passed to the buyer, carrying with it the incidents and burdens imposed by law, including that of sustaining whatever loss its destruction involved. As we have stated, the chief feature of the custom was that risk followed ownership; and its evident scheme and intent would be destroyed if it were held that while ownership did not pass because the custom was invalid for that purpose, yet the buyer did, under what was left of the custom, assume the risk of loss. Under the facts of this case, the loss could not for any reason be the buyer's loss if there was no sale, either conditional or unconditional. The custom that the risk passed to the buyer was merely an incident of the proposed sale; and when anything occurred making it no sale, the incident thereto passed away with it. The plaintiffs in this case were not entitled to recover.

*Judgment affirmed.   All the Justices concur.*