## 2714. HENTZ & COMPANY *v.* BOOZ.

1. There was no error in refusing a new trial. The decision of this case is controlled by the ruling in *Anderson* v. *Holbrook*, 128 *Ga.* 233 (57 S. E. 500, 11 L. R. A. (N. S.) 575). If a broker is privy to a wagering contract and brings the parties together for the purpose of such a contract, and advances money for margins in furtherance of the transaction, he can not recover it.

2. The defense that the consideration of a note is illegal or immoral introduces an exception to the usual rule that parol evidence is not admissible to vary the terms of the written contract, in so far as may be necessary to test the verity and bona fides of the writings, bearing wholly upon the consideration. Where the defense is that the consideration of a note or other obligation in writing is illegal or immoral, parol evidence is admissible to explain the true nature of the transaction between the parties, although it may be in conflict with the writings upon the same subject. It is often the only means by · which the truth can puncture a skilfully contrived device.

3. Parol evidence is admissible to show the true consideration of a contract which does not specify what is the consideration. In a case in which the note sued upon does not express the consideration, evidence as to what was the true consideration can not vary the terms of the writing, though it may alter its effect.

4. The error of the court in excluding some of the testimony offered in behalf of the plaintiff was harmless, for the reason that ample evidence to the same point was permitted.

5. Under the evidence submitted, it is unquestionable that the consideration of the note was illegal and immoral, being money knowingly advanced by the plaintiffs in active participation and furtherance of speculations in cotton futures, that actual delivery of the cotton was not an essential feature of the contracts, contemplated at the time they were entered into, and that the rule of the New York Cotton Exchange upon that subject was a mere subterfuge to cover the true nature of the transaction. There was no error in refusing a new trial.

DECIDED JANUARY 24, 1911.

Complaint; from city court of Floyd county—Judge Hamilton. May 26, 1910.

*Lipscomb, Willingham & Wright, Nathan Harris,* for plaintiffs. *Dean & Dean,* contra.

Russell, J.   Henry Hentz & Co. sued T. H. Booz Jr., in the city court of Floyd county, upon a note for $952.16, which he obligated himself to pay for value received.   The defendant admitted the execution of the note sued on and assumed the burden of proving that the note was given as a part of a transaction had between plaintiffs and the defendant for the purpose of purchasing cotton for future delivery, and that it was never intended in good faith by the parties that any actual delivery of the cotton should be made, but that the agreement was for the purchase and delivery of said cotton on margins, usually called dealing in futures.   The defendant filed some additional pleas, but the case hinged on the one we have just stated.   The jury found a verdict in favor of the defendant, and the plaintiffs excepted to the judgment of the trial judge in refusing a new trial:   Inasmuch as it seems clear to us that the finding reached by the jury is amply supported by the evidence, we shall only consider the general grounds of the motion in the light of the special assignments of error, because if the special assignments of error did not require the grant of a new trial, it can not be said that the verdict of the jury was either contrary to the evidence or contrary to law, or without evidence to support it, or contrary to the principles of justice and equity.   After a full and exhaustive examination and review of the entire record, we are satisfied that while some minor errors occurred in the course of the trial, they were not of sufficient gravity to have affected the result of the trial, nor likely to produce a different result if another trial should be granted.

The 4th, 5th, and 6th grounds of the motion for new trial assign error upon the admission of certain testimony delivered by the defendant in his own behalf, over the objection that each of the matters to which the plaintiffs sought to testify had been reduced to writing, and that these writings, or copies of the originals, were in existence, that the writings were higher and better evidence of their contents than the plaintiffs' statements in relation thereto, and that the effect of the plaintiffs' parol evidence was to contradict and vary these writings.   The plaintiffs' counsel stated to the judge that these writings were then in the court, and he tendered them to the defendant's counsel.   The judge, over these objections, permitted Mr. Booz to testify that there was no agreement as to the actual delivery of any cotton that he bought from the plaintiffs;

that it was his intention to sell according to the market, as the market quotations would show; also that he wrote to the plaintiffs to ascertain how much money he would be required to keep there, and they stated that "if I would keep a dollar a bale margin, they would be satisfied; and then I made all my trades with that understanding. I wrote them (the plaintiffs) with reference to taking up actual cotton. They wanted ten dollars a bale. I have not got any of the letters hardly. I had some March contracts, and I wanted them to take them up, and I asked them what margin they would require and what conditions they would require to take up the March cotton, and he (one of the plaintiffs' agents) gave me a total of the expenses, so much for re-weighing, so much for classing, and a whole rigamarole of expenses that would have to be gone over and re-certificated, and ten dollars a bale in addition."

The defense that the consideration of a note is illegal and immoral introduces an exception to the usual rule that parol evidence is not admissible to vary the terms of a written contract so far as may be necessary to test the verity and bona fides of writings bearing wholly upon the consideration. Where the defense is that the consideration of a note or other obligation in writing is illegal or immoral, parol evidence is admissible to explain the true nature of the transaction between the parties, although it may be in conflict with the writings upon the same subject. It is often the only means by which the truth can puncture a skilfully contrived device. When a writing is attacked upon the ground that it is a part of an illegal or immoral transaction, the rule that parol evidence is not admissible to contradict or vary the terms of the writing must be greatly relaxed, if it be applicable at all. Otherwise there would be no means whatever of puncturing those skilfully devised schemes by which this class of nefarious transactions, which are outlawed as being contra bonos mores, could be uncovered and exposed. The fact that the defendant had written letters to the plaintiffs as a part of an immoral transaction, which might be the best evidence of what he wrote, would not prevent the court from thoroughly probing into what was the real intention of the parties in the transaction which constituted the basis of the note sued upon. Moreover, the objection was not made before the trial court, as insisted upon here, that the plaintiffs had not served notice upon the defendant to produce the letters; and, of course, an objection which was not

presented to the trial court, and which is raised for the first time in this court, can not be considered. Furthermore, it appears from the record that the letters, as to the contents of which the plaintiff was testifying, were introduced at a later stage of the trial; and consequently the errors assigned in the 4th, 5th, and 6th grounds of the motion for a new trial, if errors at all, were harmless.

In the 7th ground of the motion complaint is made that the court excluded from the evidence a portion of the answer to the 90th direct interrogatory propounded to witness John A. Hartcorn, to the effect that "plaintiffs had every reason to suppose that defendant would accept delivery," upon the defendant's objection that it was a mere conclusion of the witness. The witness Hartcorn was permitted to answer that "actual delivery of the said cotton was contemplated; the persons from whom we bought the cotton for defendant's account not only contemplated, but were required to deliver the cotton;" but the remainder of his answer, which we have quoted above, was, we think, properly excluded as not being a statement of any substantive fact.

We think the court erred in excluding certain slips alleged to evidence sales and purchases of lots of March cotton, which had been identified and verified by the witness Hartcorn. This error was cured by the fact, however, that there is ample evidence, in similar slips, introduced at another stage of the trial, which supported equally well the plaintiffs' contention as to their course of dealings with the defendant. For this reason, although the court committed error, it is not such an error as would warrant a reversal of the judgment refusing a new trial.

Under the evidence submitted, it is unquestionable that the consideration of the note was illegal and immoral, being money knowingly advanced by the plaintiffs in active participation and furtherance of speculations in cotton futures, that actual delivery of the cotton was not an essential feature of the contracts contemplated, at the time they were entered into, and that the rule of the New York Cotton Exchange upon that subject was a mere subterfuge to cover the true nature of the transaction.

No one can read the entire record without being impressed with the similarity between many features of this case and that of *Anderson* v. *State*, 2 *Ga. App.* 1 (58 S. E. 401). It is perfectly clear that while actual delivery of the cotton might, under the

rules of the New York Cotton Exchange, have been demanded, actual delivery was not intended by either party at the time the purchases were made or the contracts entered into. The whole course of the correspondence, as well as the oral testimony introduced in behalf of the plaintiffs, and especially the answers of the superintendent of the New York Cotton Exchange to the interrogatories, show that the transaction was one outlawed by the State of Georgia The superintendent of the New York Cotton Exchange says that the expression "dealing in futures" is really without meaning although he knows it to be popularly used to express the idea of dealing in commodities for future delivery. As stated by Judge Lumpkin in *Anderson* v. *Holbrook,* supra, there were certain descriptions of articles which might be quite intelligible to those initiated in the class of dealings involved, which do not distinctly describe the articles alleged to have been bought. It may also be said that there are certain descriptive terms which, to those not initiated, would convey the idea that the object purchased was a mere intangible something which could be used only for the purpose of speculation, and words are usually defined in the sense in which they are understood by the public generally. To those initiated in the craft, "March cotton" and "May cotton" may import cotton actually in existence which both parties understand will be delivered in the months named, but inasmuch as the whole world knows that no cotton is gathered in either March or May, the terms "March cotton," "December cotton," and any others denominating cotton by month instead of by grade, are usually used to designate transactions in futures; so much so that the cotton exchanges have practically a monopoly of those terms. Such terms as those used are more apt to carry a speculative significance than otherwise, especially when the evidence abounds, as in the present case, with such unintelligible phrases (inapplicable to ordinary contracts where future delivery of the article itself is intended) as "margins," "stop notices," "call delivery," "open 700 bales," "expirer," "corner in March delivery," etc. And especially does this seem to be true when it is admitted that the grade of the cotton, which is usually an important item with the actual buyer, is absolutely immaterial, and that delivery in the class of contracts involved in this case can be made in dogtail or linters, as well as in middling cotton.

Despite the fact that both the plaintiffs' manager and the superintendent of the New York Cotton Exchange testified that they did not know what was meant by "dealing in futures," the word "futures" has been judicially defined in this State. In *Cunningham* v. *National Bank,* 71 Ga. 403 (51 Am. R. 266), the following definition and explanation of the term is given: "But what is the transaction termed 'futures'? It is this: one person says that I will sell you cotton at a certain time in the future for a certain price; you agree to pay that price, knowing that the person you deal with has no cotton to deliver at the time, but with the understanding that when the time arrives for delivery you are to pay him the difference between the market value of that cotton and the price you agreed to pay, if cotton declines, and if cotton advances, he is to pay you the difference between what you promised to give and the advanced market price. If this is not a speculation on chances, a wagering and betting between the parties, then we are unable to understand the transaction. A betting on a game of faro, brag, or poker, can not be more hazardous, dangerous or uncertain. Indeed, it may be said that these animals are tame, gentle, and submissive, compared to this monster. The law has caged them, and driven them to their dens; they have been outlawed, while this ferocious beast has been allowed to stalk about in open mid-day, with gilded signs and flaming advertisements, to lure the unhappy victim to its embrace of death and destruction. What are some of the consequences of these speculations on 'futures?' The faithful chroniclers of the day have informed us, as growing directly out of these nefarious practices, that there have been bankruptcies, defalcations of public officers, embezzlements, forgeries, larcenies, and death. Certainly no one will contend for one moment that a transaction fraught with such evil consequences is not immoral, illegal, and contrary to public policy."

The specific point involved in this case is covered by the ruling in *Anderson* v. *Holbrook,* supra, in which it is said that "If the broker is a privy to the wagering contract and brings the parties together for the very purpose of entering into the illegal agreement, and advances money for margins in furtherance of the transaction, he can not recover it. If any other rule were established, the result would be that the broker would not be allowed to recover directly on account of illegal and immoral transactions, which

the law of this State declares these fictitious dealings in futures to be, but could accomplish the same result by indirection."

None of the exceptions to the charge of the court are meritorious. A review of the charge as a whole shows that the instructions of the trial judge were accurate and impartial and covered every phase of the case.  *Judgment affirmed.*