3257.   MIXON *v.* WALKER & WALKER.

1. An agent can not recover from his principal money which he has advanced for the purchase of cotton futures for the principal; hence, such a transaction can not be successfully asserted as supplying any part of the consideration of a promissory note given to secure future advances.

2. Where a planter gives to a factor his promissory note for supplies and for money to be furnished him for the making of his crops, and the factor furnishes him some money for that purpose, and thereafter, at the direction of the planter, pays out other sums for the purchase of cotton futures for the planter's benefit, the promissory note will be upheld only as to the money advanced for the purpose other than the purchase of cotton futures.

DECIDED AUGUST 4, 1911.

Attachment; from city court of Richmond county—Judge Eve. February 16, 1911.

*E. H. Callaway,* for plaintiff in error.

*William H. Barrett,* contra.

POWELL, J.   To state thus much of the facts will be sufficient to illustrate the point which is decided and which, as we see it, controls the case.   On March 3, 1908, Mixon gave to Walker & Walker his promissory note for $1,053.33, the $53.33 representing interest.   Mixon was a planter and Walker & Walker were factors. This note did not represent any then existing indebtedness, but was given for the purpose of securing advances of money, to be made from time to time by Walker & Walker, in order to enable Mixon to make his crops.   On the day the note was given, he got $500, and on April 4 he got $250 additional.   With the exception of the sums which were paid out by Walker & Walker in the purchase of cotton futures, as will be hereafter explained, nothing further was advanced.   At the time this note was given, Mixon had 77 bales of cotton in the warehouse of Walker & Walker; on which they had made advances.   They were instructed by Mixon to sell this cotton and buy 100 bales of cotton futures.   The sale of the spot cotton somewhat more than paid the amount of Mixon's account, and left a fund to his credit on the account, if we

leave the note transaction out of consideration. In keeping up the margins on the futures contract which they bought for Mixon, the Messrs. Walker paid out $900, and the futures contract was closed out with that much loss. The testimony may make some issue as to whether the $500 and the $250 which Mixon drew were advanced to him upon the note of $1,000, or were paid to him out of the proceeds of his spot cotton, but we take the verdict of the jury as settling that in favor of the Messrs. Walker. ,In their petition the plaintiffs conceded that the full amount of the $1,000 had not been advanced; at least they only claimed $824.01, with interest from the maturity of the note, and this amount the jury allowed them.

As we view this case, it all turns upon the question as to how much the Messrs. Walker can be considered as having lawfully advanced to Mixon upon the $1,000 note. If they had in their hands money arising from the proceeds of Mixon's cotton, and he authorized or directed them to expend it in the purchase of cotton futures, and they so spent it, he could not recover it back from them in a direct action, nor could he set off the sum so expended by them by causing it to be credited upon this note. *Benton* v. *Singleton,* 114 *Ga.* 548 (3) (40 S. E. 811) ; *Clarke* v. *Brown,* 77 *Ga.* 606 (4 Am. St. Rep. 98). On the other hand, the rule is well settled that, "when a broker is privy to such a wagering contract, and brings the parties together for the very purpose of entering the illegal agreement, he is particeps criminis, and can not recover for services rendered, or losses incurred by himself in forwarding the transaction." *Irwin* v. *Williar,* 110 U. S. 499 (4 Sup. Ct. 160, 28 L. ed. 225), quoted and applied in *National Bank* v. *Cunningham,* 75 *Ga.* 366, in which it was concretely held that, "where a note was given to brokers for money which was to be expended by them in purchasing cotton futures for and on account of the maker, and no money went into his hands, such note was void." See, also, *Walters* v. *Comer,* 79 *Ga.* 796 (5 S. E. 292). Following this, it was held, in *Benson* v. *Dublin Warehouse Co.,* 99 *Ga.* 303 (25 S. E. 645), that "a promissory note given for money which had been advanced by the payee to the maker, to be used 'as margins in speculating in cotton futures,' and which the lender had, in the maker's behalf, in fact 'placed' for this purpose, is void; and its payment can not, either as against a principal or a surety thereon,

be enforced by suit." See, also, *Singleton v. Bank of Monticello,* 113 *Ga.* 527 (38 S. E. 947).

Now let us apply these principles of law to the facts of the present case. The note for the $1,000 was given upon no present consideration; the consideration was to consist in advances to be made in the future. At the time the note was given, it was not intended to be a part of any wagering transaction; and therefore was not wholly void, as the note in the *Benton* case, supra, was held to be under the particular facts there stated. However, notes made for future advances are not collectible according to the amount stated on their faces, unless those amounts have been actually and lawfully advanced. In other words, if one gives a note for $1,000 to cover advances to be made in the future, and gets under it only $500, the payee of the note can only recover the $500 and the interest. It follows that this note was valid and collectible to the amount of the $750 which was advanced on it for legitimate purposes, and for the interest on the $750. (In passing, it may be said that interest on the entire $1,000 might have been collected if the plaintiffs, on the defendant's demand, had furnished the entire $1,000 during the course of the year: for, as we understand it, where a note is given to secure advances of money to be made and the money is at the borrower's command as he may need it, interest may be charged on the full amount thus set apart for him from the time the note is given and the money put at his disposal: but in this case the plaintiffs refused to let the defendant have beyond what they had already advanced.)

In order to make the plaintiffs' demand amount to as much as the jury allowed them, it is necessary to include some of the money (a small amount, it is true, and yet enough to be material) which they paid out for the cotton futures; and this can not be done. If they had paid this money over to Mixon and he had bought the futures, or perhaps if they had merely placed the money to his credit and had honored his drafts in favor of others of whom the futures were bought, they might recover as to these items, under the doctrine announced in the case of *Singleton v. Bank of Monticello,* supra; but the fact is they were particeps criminis; they actively officiated in the buying of the futures, and they can not supply any part of the consideration of this note by showing that they advanced money in any such way. The result is that we af-

firm the judgment, on condition that the plaintiffs will write off from their judgment all in excess of $750, and the interest thereon from the date of the note.

It was argued on the part of the defendants in error that the plaintiff in error did not successfully show the illegality of these future contracts; that he did not show that they were not such contracts as contemplated a bona fide purchase and consequent delivery of the cotton. Without reciting all of the facts that appear in the record, we deem it sufficient to say that it is too clear to admit of any doubt that mere speculation, and not legitimate dealing, was involved in these cotton-future transactions. The proof of this element is as clear as it is in any of the cases which we have cited above, and in all of them the illegality of the transaction is either assumed or directly stated.

*Judgment affirmed on condition.*