14420, 14421, 14434. ALLEN *v.* SAMS *et al.* (three cases).

1. "A contract will be construed as made for a legal, rather than for an illegal purpose, and the more especially when such contract is attacked by a party thereto who has been benefited thereby" (*Virginia Bridge & Iron Co.* v. *Crafts*, 2 *Ga. App.* 126 (3), 58 S. E. 322; *Kiser Co.* v. *Padrick*, 30 *Ga. App.* 643 (2), 118 S. E. 491), and will not be held invalid on demurrer, unless the invalidity appears upon its face.

2. A valuable consideration is essential to a sale; it must be definite, or there must be an agreement by which it can be made certain; if its ascertainment becomes impossible, there is no sale. The fact that the price of goods sold and delivered was to be ascertained subsequently, by the condition of the market within a specified time at a particular place, does not affect the validity or completeness of the sale, unless for some reason the ascertainment by the terms of the contract becomes impossible.

3. It affirmatively appears from the petition designated in the court below as No. 550 that certain moneys loaned to the defendant were used by the borrower for the illegal purpose of dealing in cotton futures on margins, and that the plaintiff not only had knowledge of such purpose, but aided the borrower in carrying into effect the unlawful design, and participated therein. In such a case the lender cannot recover for the loans. But under the rulings stated in the preceding headnotes, the action was not wholly bad, and the court erred in sustaining the general demurrer thereto.

4. Where one person delivers property to another in pursuance of a contract of sale providing that the price or consideration shall be determined by the condition of the market within a specified time at a particular place, if the price is not fixed within the time specified, and no new agreement is made with reference thereto in the meantime, there is an impossibility to ascertain the price by the terms of the original contract, and there is no sale. Without more, the rights of the seller could only be fixed upon a quantum valebat. In such a case the expired agreement could not be legitimately employed as the basis for a new agreement providing that the price would be determined by the *future condition of the market*, and that the differences between the parties would be settled in money on the day fixed for ascertaining the price. Such new agreement could not be made in contemplation of an actual delivery, but the parties would be dealing in futures on margins, and neither could recover of the other upon a claim founded in such illegal transaction.

(*a*) Applying these rulings to the two actions designated in the court below as No. 548 and No. 549, the general demurrer to each was properly sustained.

DECIDED DECEMBER 10, 1923.

Complaint; from city court of Hall county—Judge Sloan. February 10, 1923.

Application for certiorari was denied by the Supreme Court.

*B. P. Gaillard Jr., H. H. Perry,* for plaintiff.

*Greene F. Johnson, C. N. Davie,* for defendants.

BELL, J.  S. H. Allen filed three suits designated in the court below as numbers 548, 549, and 550, against L. R. Sams & Company, a partnership.  He has excepted to the sustaining of a general demurrer to his complaint in each case.  Our decision in case number 550 will dispose of all the questions presented in number 548 and 549 save one, and the several cases will be treated together.  The petition in number 550 (omitting formal parts) alleges:

"4.  That said partnership is indebted to petitioner in the sum of $15,837.44, besides interest as hereinafter shown.

"5.  That on the 18th of November, 1921, petitioner sold and delivered to said partnership 100 bales of cotton; that the number and weight of each of said bales is correctly set forth in a copy of the contract or purchase of same by said partnership hereto attached, marked exhibit 'A', as part of this petition.

"6.  That the aggregate weight of said bales was 46,263 pounds.

"7.  That said cotton was actual cotton and was actually delivered by petitioner to said partnership in Gainesville, Georgia, on said date, and recovered and taken possession of by said partnership and converted to the use of said firm.

"8.  That said cotton was sold by petitioner to said partnership on the following terms: that said partnership would pay on said cotton only as a partial payment of the purchase-money of said cotton $4976.82 in cash, and would make the payment of the balance to petitioner of said purchase-money whenever petitioner should call upon them for said balance, the entire 100 bales to be then paid for at the price of 115 points on the July cotton price and quotation on the cotton exchange of New Orleans with 200 points off good middling on the day petitioner called upon them for a settlement.  A copy of said contract or purchase is annexed hereto, marked exhibit 'A,' as a part of this petition.

"9.  That the partial payment of the purchase-money of said 100 bales of cotton amounted to $4976.82, which was duly paid by said partnership, but the balance of said purchase-money has never been paid.

"10.  That on the 20th day of June, 1922, petitioner, exercising his rights under the aforesaid contract, called upon said partnership for a settlement for said cotton for the payment of said balance.

"11. That on said 20th day of June, 1922, the price and quotation of cotton on the cotton exchange at New Orleans for July was 23-08/100 cents a pound, to which, if 115 points be added, the purchase-price per pound would be 24-23/100 cents, and taking off 200 points on grading from good middling made the price 22-23/100 cents per pound, and the price of the whole weight, to wit: 46,263 pounds of said 100 bales at said 22-23/100 cents per pound was $10,284.26.

"12. That deducting the sum of $4976.82 paid by said partnership as aforesaid as a partial payment, there was due to petitioner, as the balance of the purchase-money of said 100 bales, according to the said contract, on said 20th day of June, 1922, the sum of $5307.44.

"13. That said balance of $5307.44 is now due and unpaid, and on said sum petitioner is entitled to interest at seven per cent. per annum from said 20th day of June, 1922, until it is paid.

"14. That on the date of the above purchase and the date of said contract the aforesaid partners were engaged in the business of buying and selling cotton as partners, and so continued until and on said 20th day of June, 1922.

"15. That from October 18, 1921, until February 2, 1922, said partnership being engaged in buying and selling cotton, on call, on prices to be fixed by the price and quotation of price of cotton on the New York and New Orleans cotton exchanges at the date of call, in order to protect themselves against the possible fall of prices, from time to time made contracts for the purchase or sale of cotton through brokers on or in the cotton exchanges aforesaid, or doing business on or through said exchanges, and, in order to keep said contract alive, were required to put up what are called margins or certain percentages of the contract prices on their various contracts, and obtained from petitioner various amounts of money, either in cash, check, or draft, as hereinafter itemized, which amounts were furnished said defendant at their request.

"16. On October 8th, 1921, petitioner wired to Hubbard Brothers, New York, $500 for account of J. M. Hulsey for said partnership, at the request of J. M. Hulsey, on contract for 100 bales of March cotton.

"That on November 1, 1921, petitioner wired J. D. Haywood & Son, Cotton Merchants, New Orleans, $1000 at the request of L. R. Sams for said partnership.

"That on November 11, 1921, petitioner sent direct to said partnership $2000 at their request, to be used by them as a margin aforesaid. ·

"On November 12, 1921, petitioner at the request of L. R. Sams for said partnership wired to J. D. Haywood & Son at New Orleans $1000 for said partnership of L. R. Sams Co.

"On November 18, 1921, petitioner wired to J. D. Haywood & Son, New Orleans, $1500 for said partnership of L. R. Sams Co.

"On January 26, 1922, petitioner paid for said L. R. Sams Co. $3500 to J. D. Haywood & Son, New Orleans, paid through H. K. Stanford of Atlanta. Said amount being paid by petitioner at the request of L. R. Sams for said partnership.

"On February 2, petitioner wired J. D. Haywood & Son at New Orleans for said L. R. Sams Co. and at their request $2000.

"The above amounts aggregate $12,500.

"The said L. R. Sams Co. repaid to petitioner on account of the foregoing on December 2, 1921, $1000, and on December 23, 1921, $500, and $500 on February 18, 1922, aggregating $2000, leaving due to petitioner on foregoing advancements the sum of $10,500, which he prays to recover from said defendants with interest from February 18, 1922.

"Wherefore petitioner prays," etc.

The contract attached to the petition as exhibit "A" was as follows:

"No. ——— Gainesville, 11-18-1921.

"Invoice of 100 bales of cotton bought by L. R. Sams Co.

"From S. H. Allen, against sales 100 B/C reported 11-17-21.

·"Limit 115 points on New Orleans July basis G.M.

"Marks 51 B/C AA 49 B/C X X.

[At this point in the contract is a description of the cotton by the serial numbers and the weights of the several bales.]

"Above-described cotton averages 200 points off good middling, and there being advanced $4976.82, balance to be paid at option of S. H. Allen, as above stated, light weights already deducted;

it being understood said option to be kept fully margined.  Total weight 46,263.

L. R. Sams Co., by L. R. Sams."

1.  The contract with reference to the sale of the cotton does not appear upon its face to be illegal.  The fact that it provides that the plaintiff should keep it "margined" does not alter this conclusion.  A contract containing such a feature was held prima facie good in *Robson* v. *Weil,* 142 *Ga.* 429 (83 S. E. 207). See also *Virginia Bridge Co.* v. *Crafts, 2 Ga. App.* 126 (3) (58 S. E. 322). Where the illegality of a contract does not appear upon its face, it will not be declared invalid on demurrer.  See the case last cited and others therein referred to.

Defendants in error insist that although the cotton was actually delivered, the contract is nevertheless a wager, because the plaintiff, on the sale and delivery, parted with all interest in the cotton and was only concerned thereafter in the "optional feature," by which on his call the price would be determined on the basis of New Orleans quotations for July, and that thus the parties were gambling with reference to the price of a commodity as to which the sale and delivery was complete.  Two cases by the Civil Court of Appeals of Texas are cited in support of this contention, namely, Burney *v.* Blanks, 136 S. W. 806; Wolfe *v.* Andrews, 192 S. W. 666.  The contracts there involved were in some respects similar to the one now before us.  In the first of these cases the court said: "Though the cotton was actually delivered at the time of the sale, the agreement was void as a wagering contract, since, except under the optional provisions thereof [referring to the fixing of the price by a future condition of the market] which constitute the wagering feature, only the plaintiff has any real interest in the cotton after its sale and delivery;" and further, "the mere fact that there was specified property about which the transaction occurred would make no difference.  Parties may as effectually gamble with reference to actual property as with reference to the price of different kinds of property.  The cases do not turn upon that point, but upon the actual intention of the parties."  While we have stated that the contracts in those cases were similar to the one involved here, there is one material difference.  The Texas court construed the contract in each instance as showing the value of the cotton on the

date of its delivery and the receipt by the plaintiff of full payment; not only so, but that the parties actually intended that the sale should be complete to all practical intents and purposes, and thus that the future gain or loss upon the basis of a future condition of the market was a contrivance for speculation, without respect to an actual sale. The language of the contract before us does not authorize such a construction, and for this reason we think that the cases cited are inapplicable at this point, but we shall refer to them again in connection with our consideration of the plaintiff's petition in cases 548 and 549.

2. The contract sued on is not so indefinite as to the method of fixing the price as to be unenforceable. "A valuable consideration is essential to a sale; it must either be definite, or an agreement made by which it can be made certain; if its ascertainment becomes impossible, there is no sale." Civil Code (1910), § 4128. "The fact that the price of the cotton was to be ascertained subsequently by the condition of the market at a particular place does not affect the validity or completeness of the sale. *Loud* v. *Pritchett,* 104 *Ga.* 648." *Daniel* v. *Hannah,* 106 *Ga.* 91 (3), 95 (31 S. E. 734). See also *Jeringan* v. *Wimberly,* 1 *Ga.* 220. We think that a cause of action was set forth for the balance of the purchase-price of the cotton, as alleged in paragraphs 11, 12, and 13 of the petition. It does not appear upon the face of the petition that the transaction thus far considered was in any way connected with those to which we will next refer.

3. With regard to the items declared for in paragraphs 15 and 16, we think it affirmatively appears that the defendant was "dealing in futures on margins." See *Anderson* v. *Holbrook,* 128 *Ga.* 233 (2) (57 S. E. 500); *Anderson* v. *State,* 2 *Ga. App.* 1 (58 S. E. 401); Ga. L., 1906, p. 95, section 1; Civil Code (1910), §§ 4257, 4258, 4259. This fact alone would not prevent a recovery of the plaintiff's advances if his concern was solely as a lender, although he may have had knowledge of the purpose for which the defendant intended to use the money. *Singleton* v. *Bank of Monticello,* 113 *Ga.* 527 (1) (38 S. E. 947). In that case the Supreme Court approved the following principle enunciated in *Waugh* v. *Beck,* 114 Pa. St. 442: "It is not enough to defeat recovery by the lender, that he knew of the borrower's intention to use it in a gambling transaction, in purchasing commodities on

margin; he must have known that the borrower was purposing such use of the loan and must have been implicated as a confederate in the transaction though not necessarily for gain."

It appears from the averments in regard to these advances that the plaintiff was "implicated as a confederate" in the illegal transaction. With the exception of one item, the money was sent directly by the plaintiff to the brokers with whom the defendant was dealing, and in this way the plaintiff became a party to the transaction by aiding and abetting therein. The only item not loaned in this manner is set forth in paragraph 16 as follows: "That on November 11, 1921, petitioner sent direct to said partnership $2000 at their request, *to be used by them as a margin aforesaid."* The language which we have italicized contains the solemn allegation by the plaintiff that this loan was made to the defendant not merely with plaintiff's knowledge of the use to which it would be put, but with the intention by the plaintiff that it was "to be used . . as a margin." We think the part of the complaint contained in paragraphs 15 and 16 comes squarely within the rule announced in the first headnote of the *Singleton* case, that "if the lender in any manner aids the borrower in carrying into effect the unlawful design, or participates therein, he can not recover." The plaintiff did not merely loan the money, but participated in the consummation of the unlawful project as to all sums advanced save the item of November 11, with reference to which, however, in view of the allegation made, the plaintiff must be held to have shared in the unlawful purpose or design.

Although in *Mixon* v. *Walker,* 9 *Ga. App.* 610 (1) (71 S. E. 1007), the facts were stronger perhaps against the plaintiffs than is true here, the observations of this court in that case would seem pertinent in this connection: "If they [the plaintiffs] had paid this money over to Mixon, and he had bought the futures, or perhaps if they had merely placed the money to his credit and had honored his drafts in favor of others of whom the futures were bought, they might recover as to these items, under the doctrine announced in the case of *Singleton* v. *Bank of Monticello,* supra; but the fact is they were particeps criminis; they actively officiated in the buying of the futures, and they cannot supply any part of the consideration of this note by showing that they advanced money in any such way." See also *Benson* v. *Dublin*

*Warehouse Co.,* 99 *Ga.* 303 (25 S. E. 645). But the fact that the advances for margins are not recoverable would not authorize the sustaining of a demurrer to the petition as a whole, the petition being good on its face for the recovery of the balance of the purchase-price of the cotton. Where divisible items are sued for, a part of which are recoverable, a demurrer which is general and attacks the petition as a whole should be overruled. *Port Went-worth Terminal Corp.* v. *Leavitt,* 24 *Ga. App.* 650 (1) (101 S. E. 766).

The judgment of the court below in sustaining the demurrer in case number 550 is therefore reversed, but the trial court may hereafter entertain such proper motion as the defendant may make, if any, with reference to striking paragraphs 15 and 16 of the petition, and so much of the prayer as seeks a recovery for the items therein set out.

4. It will have been noticed that the contract in case number 550 was made in November, 1921, and provided for the fixing of the price at the option of the plaintiff on the basis of New Orleans quotations for July. For reasons to be herein stated we construe "July" to mean the July next succeeding. Prior to the arrival of that time the plaintiff called for his settlement. The other two cases were suits for the recovery of the balance of the purchase-price of cotton, alleged to be due under contracts similar to the one sued on in number 550, but in these cases our conclusions are different, for the reason that material additional facts are disclosed in each. We will refer only to the averments of the petition in number 548, as a decision in this case will be controlling of number 549. The petition in that case sued upon a contract dated October 29, 1921, and provided for the determination of the price at the option of the plaintiff on the basis of 111 points added to the quotations on the Cotton Exchange of New York for "March." The plaintiff did not call for a settlement until June 20, 1922. He alleged: "That in May, 1922, defendants proposed that the price should be fixed by the price and quotation of October cotton on the cotton exchange in New York with 111 pounds added on the day petitioner called upon them for a settlement, instead of March, the only change proposed being October instead of March. To this petitioner agreed, and waived the right to call for a settlement on the basis of the March price." In the

absence of anything to the contrary, the reference in the contract to the quotations on the New York Cotton Exchange for March should be construed as implying that the price would be fixed by the quotations for March, 1922,—that is, the March next succeeding the date of the contract. "Ordinarily, when a month is referred to, it will be understood to be of the current year, unless from the connection it appear that another is intended." *Tipton* v. *State,* 119 *Ga.* 304 (2) (46 S. E. 436). The parties could not have meant March, 1921, because they were dealing with reference to the future, and the month of March of the current year was past. The rule of the *Tipton* case is therefore not absolute authority, but we should think that, following the principle therein announced, the March quotations should be the quotations for the next March following the date of the contract. If a person in October invite another to visit him in March, or promise in October to perform an act in March, there can be no doubt that the next succeeding March is the time intended. The parties could hardly have intended that the contract would continue for all time. *Baker* v. *Keever,* 130 *Ga.* 257 (60 S. E. 551). The thought might arise, however, in the mind of some that the contract would contemplate a settlement by the basis of the quotations for March of any year within a reasonable time after the making of the agreement. Such a construction would appear to be unreasonable in the case before us, because it would multiply the speculative elements of the contract and remove the implication that the parties were acting with foresight relative to known or probable conditions. The parties in October, 1921, might have a basis for judgment with respect to the price of cotton in March, 1922, but a forecast in regard to the market condition in March, 1923, nearly a year and a half beyond the date of the contract, would depend upon acreage, crop conditions, and economic problems about which the vision of the wisest could find but little basis for an intelligent conclusion. The cardinal rule of construction, to which every other is subservient, is to ascertain the intention of the parties. Civil Code (1910), § 4266. We think that if a contract be subject to two constructions, one of which would render it highly speculative and the other of which would confine its operation to facts and circumstances more reasonably to be anticipated, the latter should be adopted as the one more likely

in harmony with the intention of the parties, who presumably would not desire in the contract any element of chance that might reasonably be avoided, but would prefer to agree with reference to conditions about which an intelligent judgment might be exercised. In the absence of anything in the petition to show a different meaning, we are satisfied that the contract here under consideration, made in October, 1921, and providing for the fixing of the price of the cotton by the quotations of March, should be construed as referring to the quotations for March, 1922. The petition does not claim that the clause under consideration should not be understood according to the ordinary import of the words employed, and the rule is applicable that words in a contract usually bear their usual and common signification.

No call for a settlement was made by the plaintiff until June, 1922. We would not suppose that quotations were made upon the New York Cotton Exchange for March, 1922, after the month of March in that year had passed. It would thus appear that the method of fixing the price of the cotton as prescribed by the agreement had been rendered impossible by the inaction of the plaintiff until subsequent to the time within which the price of the cotton might be determined by the terms of the contract. Referring again to the Civil Code, § 4128, we note that if the ascertainment of the consideration becomes impossible, there is no sale. "Where the parties to an executory agreement for the sale of goods agree that the price to be paid for the property shall be fixed by valuers nominated in the agreement, there is no contract of sale if the persons appointed as valuers fail or refuse to act as such; and this is true even where one of the parties to the agreement is the cause of such failure or refusal." *Elberton Hardware Co.* v. *Hawes*, 122 *Ga.* 858 (1) (50 S. E. 964). "A valuable consideration is essential to a sale; and if its ascertainment becomes impossible, there is no sale. Where a contract is made for the sale, at a specified price per pound, of certain bales of cotton, even though there be a constructive delivery to the buyer, if the weights of the cotton be then unknown, and such weights, by which the amount of the purchase-price is to be determined, are by such contract to be ascertained by subsequent weighing by the buyer when actual delivery to him is made, and the cotton is destroyed by fire before being so delivered and weighed and it becomes im-

possible to ascertain such weights, there is no sale." *Deadwyler* v. *Karow*, 131 *Ga.* 227 (1) (62 S. E. 172, 19 L. R. A. (N. S.) 197). That is certain which may be made certain, but the validity of the contract was nullified by the failure of the plaintiff to take the necessary action to fix the price in the manner and within the time provided by its terms. The defendant, having received the cotton, would be liable for its value as of the date of its delivery, less the amount of advances thereon. Civil Code (1910), § 5513. The rights of the plaintiff could not be determined under the original contract, but were fixed by the law under the pro-' visions of this code section, and in the absence of a new *valid* agreement could only be enforced upon a quantum valebat. Compare Humaston *v.* American Telegraph Co., 20 Wall. (U. S.) 20 (1) (22 Law. ed. 279). The plaintiff could have no further interest *in the cotton or in the fixing of the price under the agreement*. His interest was solely in the collection of its value upon the date of delivery. When, therefore, in May, 1922, the parties undertook to substitute October for March, and to extend the operation of their agreement, they could not possibly be dealing with reference to a subsisting contract or on the basis of an actual sale of cotton, whether there was a new consideration or not. The original contract was extinct, and thereafter the parties were engaging solely in a speculation. The original agreement could no more be used as a basis for a new engagement of the *particular kind made* than one fully performed, however long before. Thus, in the transaction relied upon, the parties were "dealing in futures on margins."

The Texas decisions referred to above would appear now to be applicable. We think, too, that under the decisions in this State the transactions declared on are outlawed. "Anything which induces men to risk their money or property, without any other hope for return than to get for nothing any given amount from another, is gambling, and demoralizing to the community, no matter by what name it may be called." Quoted from Brua's Appeal, 55 Pa. 298, in *Anderson* v. *State*, 2 *Ga. App.* 1 (1), 24. See also *Hentz* v. *Booz*, 8 *Ga. App.* 577 (5) (70 S. E. 108); *Anderson* v. *Holbrook*, supra; Civil Code (1910), §§ 4256, 4257, 4258. The plaintiff does not lay his case upon a quantum valebat, but alone upon the contract.

Assuredly the parties were at liberty to contract anew with

reference to the respective rights and liabilities as fixed by law upon the failure of the original contract, provided the new agreement was not of a character inhibited by law. The vice in the case is not that the parties undertook to agree about a matter which could not be the subject of contract, but rather that the character of the particular agreement made is condemned by law. The attempted novation could not have been made in anticipation of an actual delivery, for it appears that the only delivery which could have been in mind was one irretrievably past, and the new agreement was therefore invalid because it necessarily contemplated a mere settlement of the differences based upon the market value of the goods on a future day.

What is said above with reference to the case numbered 548 applies equally to number 549. The general demurrer was properly sustained in each.

*Judgments in cases designated in the court below as numbers 548 and 549 affirmed; in number 550 reversed, with direction. Jenkins, P. J., and Stephens, J., concur.*