22650. HUTCHINSON *v.* BROWN, executor.

DECIDED MAY 29, 1933.

*Edgar Latham,* for plaintiff.  *R. B. Blackburn,* for defendant.

JENKINS, P. J. This suit is against an executor for loss sustained in the sale and purchase of cotton on the New York cotton exchange. The petition alleges: that on December 13, 1926, the testator requested the plaintiff "to sell 100 bales of cotton on the New York cotton exchange, to be delivered on the 25th day of May, 1927;" that in compliance with this request, plaintiff "did sell said cotton through Hyman & Company, who were members of the New York cotton exchange at the time, and with whom your petitioner had on deposit money for the protection of the said sale of said cotton;" that the testator requested plaintiff to make said sale "and to carry the same for him;" that plaintiff "did make the said sale as aforesaid, and had said sale charged to his account and against funds which Hyman & Company held belonging to . . petitioner," at 12.40 c. on the date aforesaid; that on April 25, 1927, the testator directed plaintiff "to close said sale of 100 bales of cotton at the price then being quoted on the New York cotton exchange, and on said date . . petitioner did close said sale by purchasing 100 bales of cotton on said exchange through Hyman & Company at the prevailing quotations of 15.15 c.;" that "the difference between the sale price of said cotton and the price of 100 bales purchased on April 25, 1927, for the purpose of meeting said sale, was $1,400.62;" that this loss, which "was charged to the funds which (plaintiff)

had on deposit with Hyman & Company," was paid by plaintiff for the testator at the latter's direction, for which amount, with interest at 7% per annum from April 25, 1927, less $100 credits, plaintiff sued. The trial court sustained a general demurrer to the petition, on the ground that the allegations showed a gambling contract and illegal dealing in cotton futures.

1. "Laws prescribe only for the future; they can not impair the obligation of contracts, nor generally have a retrospective operation. Laws looking only to the remedy or mode of trial may apply to contracts, rights, and offenses entered into or accrued or committed prior to their passage." Civil Code (1910), § 6; article 1, par. 2, constitution of Georgia (Park's Code, § 6389). The trans-. actions and agreements involved in the instant case being prior to the passage of the act of the General Assembly, approved August 27, 1929 (Ga. L. 1929, p. 245), expressly repealing sections 4257 to 4264, inclusive, of the Civil Code of 1910 and all laws and parts of laws relating to contracts for the future delivery of cotton and other commodities, the law of force at the time of such transactions and agreements must govern in determining as to their validity and effect. But see also, as to their validity under the new act, section 3 and the last sentence in section 2 of the act.

2. Under the statutes of this State, prior to the enactment of the act approved August 27, 1929, all contracts and agreements to buy or sell or deliver cotton or other commodities, "when in fact it is not in good faith intended by the parties that an actual delivery of the article or thing shall be made," or to purchase or sell and deliver "on margin, commonly called dealing in futures, when the intention or understanding of the parties is to receive or pay the difference between the agreed price and the market price at the time of settlement, were made illegal. Civil Code (1910), §§ 4257-4262, 4256. "Where a broker is privy to such a wagering contract, and brings the parties together for the very purpose of entering into the illegal agreement, he is particeps criminis, and can not recover for services or losses incurred by himself in forwarding the transaction." *National Bk. of Augusta* v. *Cunningham, 75 Ga.* 366; *Walters* v. *Comer, 79 Ga.* 796 (5 S. E. 292) ; *Anderson* v. *Holbrook, 128 Ga.* 233 (57 S. E. 500, 11 L. R. A. (N. S.) 575) ; *Mixon* v. *Walker, 9 Ga. App.* 610 (71 S. E. 1007) ; *Hentz* v. *Booz, 8 Ga. App.* 577 (1, 5), 582 (70 S. E. 108).

3. Even though, under the previous law, "an executory contract or agreement for the sale of cotton or other commodities to be delivered at a future date is valid and lawful under the laws of this State, although at the time of making the contract the seller has not the cotton or other commodity in his possession, has not contracted to purchase the cotton or other commodity, and has no expectation of acquiring the cotton or other commodity necessary to fulfil his contract otherwise than by purchasing it at some time before the day of delivery," and such a contract "would be legal though neither (of the parties) contemplated making personal delivery to the other of the commodity called for in the contract," but contemplated delivery "through an agent or broker or by some one else who became substituted in the contract," yet as to such future deliveries the parties must intend "that the commodity bought or sold shall *actually be delivered*," and a broker is guilty of a violation of the statute "if he executed a transaction for a client with knowledge that the client did not intend a delivery of the goods bought or sold, but where it was the intention or understanding of the client to receive or pay the difference between the agreed price and the market price at the time of settlement. The use of the word 'parties' in section 2 of the act (Civil Code, 1910, § 4258) is not to be construed as meaning that such intention must have been entertained by the parties on both sides of the contract. It is used in the sense of persons either buying or selling without intention to make actual delivery, without regard to the intention of the party or parties contracted with." *Layton* v. *State,* 165 *Ga.* 265 (2, 12) (140 S. E. 847) ; *Forsyth Mfg. Co.* v. *Castlen,* 112 *Ga.* 199 (337 S. E. 485, 81 Am. St. R. 28).

4. In a suit by a broker or agent against the estate of his deceased principal for the recovery of the amount of a loss sustained in the sale and purchase of cotton for future delivery, because of an increase in the price quoted on the New York cotton exchange, it was not error to sustain a demurrer to a petition which alleged that on December 13, 1926, the decedent requested the plaintiff "to sell 100 bales of cotton on the New York cotton exchange to be delivered on the 25th day of May, 1927," that the cotton was sold through certain members of the exchange, and that on April 25, 1927, before the alleged delivery date, the plaintiff, by request of the decedent, closed said sale by purchasing 100 bales of cotton at

the price then being quoted on said exchange, but which petition also showed on its face that no actual delivery of the cotton was contemplated by the principal or the agent, but that the dealing and settlements therefor were based on the quoted prices of cotton on the New York cotton exchange on different dates, by further alleging that the original sale was made through members of the exchange, "with whom your petitioner had on deposit money for the protection of the said sale of said cotton;" that in requesting plaintiff to make said sale, the testator requested plaintiff "to carry the same for him;" that the sale as originally made (to some unstated purchaser) was never effected by any payment of or agreement to pay the purchase-price by a purchaser, but the amount was "charged to (plaintiff's) account and against funds," which said members of the exchange "held belonging to your petitioner;" and that the plaintiff, in closing the transaction on the date stated, before the alleged original delivery date, did so at the decedent's request and authority for the increased price quoted on the exchange at such closing date, through the same members of the exchange, merely by charging the loss "to the funds which (plaintiff) had on deposit" with such members.

*Judgment affirmed.   Stephens and Sutton, JJ., concur.*