## 22684. RICH *et al. v.* RAWLEIGH COMPANY.

DECIDED AUGUST 18, 1933. REHEARING DENIED SEPTEMBER 29, 1933.

*J. E. Drake, P. D. Rich,* for plaintiffs in error.

*John R. Wilson, W. H. Miller,* contra.

JENKINS, P. J. ■ "Upon the party alleging that a judgment is erroneous is the burden of making it appear to the reviewing court that material error was in point of fact committed; and when the record of the proceedings sought to be reviewed is so confused or imperfect as not to disclose the alleged error, the judgment is to be presumed right and will be affirmed." *Gairdner* v. *Tate,* 121 *Ga.* 253 (48 S. E. 907); *Grier* v. *Brown,* 118 *Ga.* 670 (45 S. E. 455). The plaintiffs in error (defendants in the court below) assign error on their exceptions pendente lite, filed and

certified May 26, 1932, in which they state that the order complained of is an order striking their affirmative answer as amended, which was offered on "November 6, 1931," and allowed on "March 12, 1932," and sustaining the special demurrer thereto, filed "May 3, 1932." In the bill of exceptions appear an answer filed May 9, 1931, a demurrer thereto, filed May 11, 1931, an amendment to the answer, filed March 14, 1932, a demurrer to the answer as amended, filed May 4, 1932, an order dated May 13, 1932, sustaining the special demurrer and striking the affirmative defense in the answer, an additional amendment to the answer, tendered May 19 and filed May 23, 1932, a demurrer or objections of the plaintiff to the last-stated amendment to the answer, the date of which demurrer does not appear, and an order dated May 24, 1932, sustaining all the grounds of the special demurrer of the plaintiff, and striking all of the affirmative defenses of the defendants. On motion of the defendant in error to increase the record, there also appear: an order dated May 23, 1932, which recites that "the within motion and demurrer coming on for a hearing, . . the same is by the court overruled on all the grounds thereof, and amendment allowed subject to demurrer," without identification of the motion, demurrer, or motion thus passed upon; and general and special demurrer "to the defendants' plea and answer as amended;" and an order dated May 24, 1932, which recites that "the within demurrer to the original plea and answer of defendants, and to the plea and answer of defendants as amended, coming on for a hearing, . . the same is by the court sustained on all the grounds of the special demurrer, and all of the defendants' affirmative defenses are stricken," without identifying which of the four pleadings referred to as demurrers and what amendment or amendments were thus determined. The only assignment of error, save on and in the exceptions pendente lite and to the verdict and final judgment for the plaintiff, is as follows: "That the said [defendants] here and now assign error on said exceptions pendente lite, and say that the court erred in sustaining said demurrer herein complained of, and to which ruling of the court the said defendants . . did then and there except, and here and now except and assign said actions of the court as error." It is thus impossible to identify any of the numerous answers, amendments, demurrers, and orders in the record with the date

recitals in the exceptions pendente lite; and in this confused state of the exceptions pendente lite and the record, we must presume that whatever judgment on whatever pleadings it was intended to refer to was right, since there is no proper showing to the contrary. The assignment of error in the final bill of exceptions, which is above quoted, following its reference to the exceptions pendente lite, is likewise ambiguous. But since it excepts to *"said actions* of the court as error," and the exception is preceded by mention of the various answers, amendments, demurrers, and orders above referred to, we will consider the rulings of the trial court made within the time limit required for the final bill of exceptions to be taken therefrom under the Civil Code (1910), § 6152.

■ The plaintiff sued the two defendants who are plaintiffs in error, as sureties, jointly with another as principal, on an open account for goods bought by the principal under a contract signed by the principal and the sureties, a copy of which is attached to the petition. Under the contract, goods were to be purchased by the principal from the plaintiff corporation, and resold by the principal on his own responsibility and not as agent of the plaintiff; any instructions or literature which might be furnished by the plaintiff to the principal were to be deemed only advice and suggestions, in no way binding on the principal or modifying the written contract; and the written agreement was designated as the only contract, which could not be modified except in writing signed by both the principal and the plaintiff with the latter's corporate seal affixed. No contention was raised, as in *Rawleigh Co.* v. *Salter,* 31 *Ga. App.* 329 (120 S. E. 679), and in *Etheridge* v. *Rawleigh Co.,* 29 *Ga. App.* 698 (116 S. E. 903), that, the contract being one of guaranty and not of suretyship, the parties signing the contract as guarantors could not be joined as defendants with the principal debtor.

(*a*) The first defense in the amendment to the answer alleged that the contract sued on was illegal, contrary to public policy, and unenforceable, in that it was a subterfuge by the plaintiff corporation for the purpose of evading, and having the party named as principal evade, the peddling license and tax laws of the State; that the purpose of "the language embraced in said contract, which was prepared by the plaintiff corporation, was to evade and avoid the payment of a license tax to the State of Georgia and

a peddling tax to each county in which their said agent was to operate their said business;" and that the plaintiff was to give this alleged agent "full, definite, and complete instructions as to the manner in which said plan should be carried out, all of which was unknown" to the defendants signing the contract as sureties. "Where a written contract is plain and unambiguous, it is the only evidence of what the parties intended and understood by it." *Crawford* v. *Cathey,* 143 *Ga.* 403, 405 (85 S. E. 127). "All oral negotiations between parties to a written contract, which either preceded or accompanied the execution of the instrument, are to be regarded as merged in, or extinguished by it; and the writing is to be treated as the exclusive medium of ascertaining the agreement to which the contractors bound themselves." *Logan* v. *Bond,* 13 *Ga.* 192 (3); *Rauschenberg* v. *Peeples,* 30 *Ga. App.* 384 (5) (118 S. E. 409). A plea seeking to substitute a parol understanding varying the plain and unambiguous terms of a written contract should be stricken when properly attacked by motion or demurrer. *Dozier* v. *Davison,* 138 *Ga.* 190 (2), 195 (74 S. E. 1086). "Fraud, to be the basis of rescission or reformation of a contract, must be fraud in the execution thereof; and when it is attempted to annex to the writing a parol conditional stipulation, it must appear that such stipulation was omitted from the writing, at the time of execution, through fraud, accident, or mistake." *Capps* v. *Edwards,* 130 *Ga.* 146 (4) (60 S. E. 455). The court therefore did not err in striking the first defense upon the special demurrers thereto on the grounds, among others, that it sought to alter and vary the written contract, as above set forth, and that the allegations as to the contract being a subterfuge, illegal, and unenforceable were bare conclusions and not supported by necessary facts. The averments of this defense not only seek to contravene the written contract, but fail to show that the party signing as principal or any of the other defendants signing as sureties joined in the alleged illegal intention of plaintiff.

(*b*) The 2d and 3d paragraphs of the last amendment to the answer quote the provision of the written contract that the buyer (the party signing as principal) "is in business for himself, and that the seller [plaintiff] does not undertake in any way to control buyer in the conduct of his business," and set up that when

the contract was made the defendant sureties had an understanding with the principal that he was to purchase goods and products from the plaintiff as stated in the contract, and to retail them to whom and wherever he could only for cash, that in this manner the principal would at all times be in possession of the goods or the cash necessary to account to the plaintiff, the contract obligating the plaintiff to take back from the principal all unsold merchantable products; that thereafter the plaintiff sent a named "representative," who, without their knowledge and consent, gave to the principal "certain instructions and directions as to how, where, and to whom said products should be sold, restricting" the principal to a described territory (the contract containing no such restriction), forbade him to sell said products elsewhere, and directed him to deliver said products and place the same on trial with any one in said territory without the payment of cash therefor, all of which was unknown to the defendant sureties until the filing of the suit, and discharged them from liability on the contract, because it materially increased their risk and obligation. The court did not err in striking these defenses on the grounds of special demurrer, among others, that they fail to allege that the person named as "representative" of the plaintiff was its agent duly authorized to restrict the territory and to do the other alleged acts, that they seek to modify, amend, and change the express provisions of the written contract, as to the methods by which the principal should do business, and as to how the contract itself could be altered, changed, or modified (by writing signed and sealed as the contract provides), and that the allegations fail to allege specifically how and in what respect the contract was violated. These defenses do not allege the requisite facts to show any novation of the original contract by a valid new agreement between the principal and the plaintiff; and even if there were such a novation, they do not show whether the alleged new instructions were carried out by the principal, and how they were carried out, with increased risk to the sureties. There are no averments as to whom, when, and for what amounts credit sales were made.

(c) The 4th paragraph of the amendment alleges, that, "in addition to *the* explicit instructions given to the said [principal] by and through their authorized agent and representative [named], plaintiff corporation placed in the hands of the said

[principal] a book known and entitled 'Rawleigh Methods,' and the said [principal] was instructed to make a careful study of said book and to use the same as a guide for the conduct of his said business;" that on a certain page of said book the principal was directly instructed in the method he should use in evading the peddling license and taxes due to the State and its counties; that he should take orders from his customers for delivery and shipment later, "and make it appear that the order was taken and sent to another State to be filled;" and that "such conduct on the part of the plaintiff corporation in such collusion with their principal, without the knowledge and consent of these defendants, who were sureties for the said [principal], was a novation of the original contract, materially increasing their risks under said contract, and thereby discharged them from all obligation thereunder." The demurrers attacked these averments as showing no defense, and set up that neither the alleged representative of the plaintiff nor any on else had authority to change the methods of doing business as provided by the original written contract; that the contract could be legally altered only in writing signed by the parties with the seal of the plaintiff corporation, after notice to the sureties as provided in the contract; and that the allegations showed no such authority to the representative, or that any change in the contract had been legally made. Construing, as must be done, the averments of this defense most strongly against the pleader, they do not properly and sufficiently show either a valid novation in the original contract between the plaintiff and the principal, or any sufficient facts constituting a violation of the peddling statutes of the State, or collusion against the defendant sureties.

(d) "A plea alleging fraud, but not alleging specific acts constituting fraud, should be stricken on demurrer." *Carroll* v. *Hutchinson,* 2 *Ga. App.* 60 (58 S. E. 309). The 5th and 6th paragraphs of the amendment merely by legal conclusions add to the preceding averments a charge of "fraudulent collusion" between the plaintiff and the principal, in selling "products indiscriminately to various consumers whose names are unknown to these defendants, the identity of the products sold being unknown to these defendants, the aggregate amount of such products so sold being unknown to these defendants, without the payment of the cash;" that "such credit sales were made by reason of a

secret agreement and understanding between the plaintiff corporation and the said [principal], unknown to these defendants, which amount to an actual fraud against these defendants;" and that the plaintiff knew that "under the terms of the contract all goods were chargeable against the sureties," and its "insisting upon and directing the said [principal] to sell said products on credit, to place said products on trial, *or in encouraging* the said [principal] to dispose of any of said products without receiving the cash therefor, amounted to the perpetration of an actual fraud against these defendants," by which they were discharged; and that this was not discovered until the suit was brought. The court did not err in sustaining the demurrers to these paragraphs on the grounds, among others, that they are too vague and indefinite, and are mere conclusions not supported by necessary facts, and are in conflict with the written instrument.

(*e*) Nor did the 7th and 8th paragraphs allege defenses good against the special demurrers, containing grounds similar to those attacking other paragraphs. The 7th paragraph alleges "upon information and belief" that the plaintiff "has failed and refused to accept from the said [principal] the return of a large quantity of products which were returned to them by the said [principal], and for which they have failed to allow any credit, the amounts thereof, the dates the same were returned, a description of said merchandise, all being unknown to these defendants." The 8th paragraph contains the mere charge and general conclusion, that, "by reason of the facts stated in this answer, these defendants allege that the plaintiff corporation has perpetrated an actual fraud against them, in that they have made no bona fide effort to carry out the plain written terms of the contract with the said [principal], and that by reason thereof these defendants, for having their risk increased without their knowledge and consent, are discharged from said contract."

The judge did not err in striking the affirmative defenses filed in the answer as amended, and, on the trial of the issue made by the defendants' general denials (left unstricken in their original answer), in directing a verdict and entering a judgment in favor of the plaintiff for the amount sued for; there being no assignment of error with a brief of evidence so as to raise any question except the striking of the special defenses.

*Judgment affirmed. Stephens and Sutton, JJ., concur.*

ON MOTION FOR REHEARING.

JENKINS, P. J. Movants contend that the court, in divisions 2 and 2(a) of the syllabus, overlooked *Hentz* v. *Booze,* 8 *Ga. App.* 577 (70 S. E. 108), and *Roberts* v. *Arnall,* 9 *Ga. App.* 328 (71 S. E. 590), and the elementary rule stated in those cases that parol evidence is admissible to show that the object or consideration of a written contract, lawful on its face, was in fact illegal. That principle was not overlooked, but is without application under the allegations made in the answer. "When a contract is valid upon its face, or, when taken in the light of the circumstances surrounding the parties at the time it was entered into, appears to be valid, it is incumbent upon him who attacks the contract to show its invalidity." *Wright* v. *Vaughan,* 137 *Ga.* 52 (72 S. E. 412). It is true that, in determining whether a contract is illegal or immoral, the substance of the true agreement as shown by parol may control, notwithstanding the form and words expressed in the writing. But the illegality must be mutual between the parties, and the illegal intention must be common to both. Mere unlawful intent on one side only will not invalidate the agreement. See *Mechanics Realty Co.* v. *Leva,* 16 *Ga. App.* 7 (84 S. E. 222); 13 C. J. 517, 772. The first defense charges that the contract is illegal in that it "is a subterfuge resorted to by the *plaintiff corporation* for the purpose of evading license tax laws and the peddling license laws of the State of Georgia." As pointed out in the original opinion, "the averments of this defense . . fail to show that the party signing as principal or any of the other defendants signing as sureties joined in the illegal intention of *plaintiff.*" In the absence of such a showing, the original purpose of the plaintiff would be ineffective.

It is also contended that the court overlooked other defenses, not seeking to contravene the parol-evidence rule, that, after the making of the original contract (upon which suit was brought), the risk of the defendant sureties was increased, so as to release them from liability under the written contract, by reason of the subsequent giving of instructions to the principal as to how he should violate the peddling laws of the State, conduct his business in a territory larger than that provided in the contract, and sell on credit instead of for cash, as required by the contract. "A subsequent illegal agreement will not affect a prior lawful one between the same parties." 13 C. J. 511.

Where a party claims that a contract is illegal or void, he must plead the facts showing such invalidity, and bare conclusions of the pleader are insufficient. See *Kimbro* v. *Bank of Fulton,* 49 *Ga.* 419 (5), 421; 11 Stand. Enc. Proc. 896; 13 C. J. 742, 760, §§ 890, 947.

The defenses were defective, not only in failing to show mutuality in the alleged illegal purpose of the contract, but also in failing to set forth necessary facts as to how and why the agreement was illegal, or the necessary facts to show a valid new agreement, or other acts and conduct sufficient to release the defendant sureties from liability under the original contract.

*Rehearing denied. Stephens and Sutton, JJ., concur.*