38896. GULBENKIAN v. PATCRAFT MILLS, INC.

Decided June 20, 1961—Rehearing denied July 5, 1961.

*Johnson, Hatcher, Meyerson & Irvin, Henry M. Hatcher, Jr.,* for plaintiff in error.

*Pittman, Kinney & Pope, H. E. Kinney, L. Hugh Kemp,* contra.

EBERHARDT, Judge. 1. Plaintiff demurred to paragraph 12 of defendant's answer wherein it was set up that "in addition, (to other matters provided in the letter of November 6, 1957), the plaintiff was to aid the said Walter Rudinger (defendant's sales manager) in selecting and lining up competent salesmen in the eastern part of the United States, but failed to do so in accordance with his agreement," upon the ground that such "allegation seeks to add to the terms of the written agreement between the parties, which agreement purports to be complete upon its face."

The overruling of this ground of demurrer was error. The letter of November 6 was clear, explicit, plain, unambiguous in

setting out the terms of the agreement, and, in addition, defendant took the precaution to make certain that it did contain the full agreement by asking, in the last paragraph of the letter, "if there are any discrepancies in this or anything that needs to be added to it, please let me know so that I can make corrections." *Code* §§ 20-702, 38-501. *Rich v. Rawleigh Co.*, 47 Ga. App. 571, 574 (171 SE 228).

2. For the same reason it was error to overrule the demurrer to paragraph 14 of defendant's answer wherein it was alleged that "there was no time specified in the agreement between the parties for which the agreement was to run. However, the agreement by and between the parties was that the defendant would pay to the plaintiff the sum of $1,000 per month for so long as the contract should be in force. The parties agreed that if the contract remained in force for at least twelve months a minimum guarantee of $12,000 a year would be paid plus 1% of the gross sales if over $12,000 was realized by the plaintiff. If the 1% amounted to over $12,000 a year the plaintiff was to get the difference between the $12,000 and the 1%."

3. Since the contract here was plain and unambiguous its construction was for the court. *Code* § 20-701. There was nothing for the jury to construe. Even if it had been ambiguous, the testimony of one party as to his intent in the making of the contract, or as to its effect, undisclosed to the other, is not competent. *Read v. Gould*, 139 Ga. 499 (3), (77 SE 642); *Chambers & Co. v. Walker*, 80 Ga. 642 (11) (6 SE 165).

While there was no time specified in the letter of November 6 for the termination of the tenancy, the "guarantee of $12,000 per year" and providing for additional payment at the end of the year based upon sales volume for the year is sufficient to make it for a period of at least one year.

Defendant's contention that plaintiff had failed to supply stenographic service as provided in the letter is not supported by the evidence. True enough, defendant testified and plaintiff admitted that the employees in his office did not take shorthand. But this is no proof of failure to supply such service.

Many of the very best secretaries in business and professional offices use other methods for transcribing dictation than shorthand. Indeed, perhaps a majority of them now perform that service with the aid of dictating machines. Not only that, but there was no evidence that defendant had, at any time, requested and been refused such service in plaintiff's office. If there had been such a request and refusal defendant might have succeeded in showing a partial failure of consideration, but the burden was on it to show such and there was neither pleading nor evidence to that effect. *Hotchkiss v. Newton*, 10 Ga. 560; *Pusey & Co. v. McElveen Comm'n. Co.*, 93 Ga. 773 (21 SE 150).

Defendant's evidence, including both the testimony of its president and the letter which he wrote on April 1, 1958, indicated that it was seeking a more economical space in which to display and sell its rugs in New York, that at that time it had opportunity to procure such space but, in order to do so, would have to act immediately. Hence, it sought to terminate its agreement with Gulbenkian and make one with another, for in the letter of April 1 defendant stated, "On Thursday I asked you about an adjustment and you said you were expecting me to say I would pay more instead of less when I was already paying you $1,000 per month for what little space we had to display our goods in, I did not know what you were expecting. Then on Friday afternoon when I was called down at Iselin's office and offered this space, I had to give them a 'Yes' or 'No' answer, as the people who were giving up the space were in the rental agency's office and they had to complete the deal then. Since you had hinted that you wanted more money instead of less for the amount of space and service that we had, I felt that we should go ahead and get this space while I could—more especially when my sales were not what I was expecting them to be even with all the sales help you referred to. I am enclosing a list of sales by states for January, February and March, 1958. On a commission basis you would have received only $1,450.62 for these months. We have paid you $3,000. Frankly, with the competition we have on tufted rugs, we cannot pay a 2% commission for a showroom. . ."

If a firm contract can be terminated on such a basis with impunity then indeed is the basis of our industry and commerce on shifting sands. Perhaps the defendant here had made a bad bargain—one that was uneconomic for it. But such is the tuition in the school of hard knocks where lessons are learned that will be of incalculable value in determining the course of future policies and operations. If defendant had desired an "escape clause" in his contract so that he might terminate the agreement at will, it should have been included as a part of the contract when it was made. Industry and commerce demand stability in contracts and business relationships and such we must have.

The evidence demanded a verdict for the plaintiff for the $6,500 sued for, and the trial court erred in denying the motion for a judgment notwithstanding the mistrial.

Judgment reversed with direction that such be entered in plaintiff's favor. *Carlisle, P. J., and Nichols, J., concur.*