## A95A1171, A95A1172. GEORGIA MAGNETIC IMAGING, INC. v. GREENE COUNTY HOSPITAL AUTHORITY; and vice versa.

(466 SE2d 41)

RUFFIN, Judge.

Georgia Magnetic Imaging, Inc. ("GMI") had three two-year contracts with the Greene County Hospital Authority d/b/a Minnie G. Boswell Hospital ("hospital authority") to provide CT Scan, mammogram and sonogram services to the hospital authority. Sixteen months into the contracts, the hospital authority unilaterally terminated the contracts, and GMI sued to recover sums due for services rendered and lost revenues for the time remaining on the contracts. The hospital authority filed a counterclaim alleging that GMI breached its obligation to provide 24-hour emergency CT Scan services. The trial court denied both parties' motions for summary judgment, and both petitioned this court for interlocutory review. We granted GMI's application to consider whether GMI was obligated to provide 24-hour emergency CT Scan services and whether the hospital authority's chief financial officer was authorized to enter into contracts on the hospital authority's behalf. We denied the hospital authority's application which raised the question of whether the hospital authority suffered financial detriment under the contracts and therefore was justified in terminating them. Both parties now appeal.

### Case No. A95A1171

1. GMI contends it was entitled to summary judgment on the hospital authority's counterclaim because it was not obligated under the contract to provide 24-hour emergency CT Scan services.

The contract indicated that GMI was providing nuclear medicine and ultrasound services to area hospitals on a shared basis and that it planned to provide mobile CT Scan services on a shared basis as that arrangement had proved to be a cost-effective method of satisfying the need for such services. With regard to scheduling, the contract provided in pertinent part: "[GMI] will provide CT scanner on mutually agreed time schedule. . . . If at any time it is determined by

HOSPITAL that the delay under any of the above conditions is dangerous to the welfare of the patient, then HOSPITAL is free to make any other arrangements that it desires for scanning an emergency patient." An addendum to the contract also provided that if the hospital "exceeds 50 or more [scans] in three consecutive months, [GMI] will negotiate placing a C. T. scanner in house for full time coverage."

In support of its motion for summary judgment, GMI submitted the affidavit of Richard Smith, its president and chief executive officer, who stated that GMI and the hospital agreed that CT Scans would be performed on Wednesdays; that the hospital never reached the volume of 50 scans per month requiring the parties to negotiate for a full-time in-house scanner as provided in the addendum; that until termination, the hospital never contended that GMI was obligated to furnish CT Scans on a 24-hour or emergency basis; that, as a courtesy, GMI did send the mobile unit to the hospital whenever the hospital requested and the unit was available; and that GMI informed the radiologist and other hospital officials that due to the location of the CT Scan units at various times, one was not always available for emergencies. Smith also stated that during the terms of the contracts, the hospital hired a new administrator, Louis Kuntz, who attempted to negotiate new contracts for in-house, daily CT Scan, mammography and sonography services and that when the parties could not agree to new terms, he terminated the contracts.

In opposition to the motion for summary judgment, the hospital authority submitted the affidavit of Dr. William Rhodes, a member of the hospital's board of directors, who stated that in reference to the hospital board meetings in which the proposed contract with GMI was discussed, "it was his impression" that GMI "was to be available at any time for emergency 'CT Scans' at the Hospital, under any agreements under discussion." The hospital authority also argues that the phrase "mutually agreed time schedule" is ambiguous and presumably can be interpreted to mean that GMI was obligated to provide CT Scan services on a 24-hour emergency basis.

"OCGA § 13-2-3 declares that '(t)he cardinal rule of construction is to ascertain the intention of the parties.' 'It is ordinarily the duty of the court to interpret a contract as a matter of law and, where necessary, to construe it by applying the rules of construction set forth in OCGA § 13-2-2. (Cits.) . . . Where the language of an instrument may fairly be understood in more than one way, it should be interpreted to reflect the sense in which the parties understood it at the time of execution, and extrinsic evidence is admissible to establish what that original understanding was. (Cit.) That meaning is to be preferred which will give effect to the contract as a whole. OCGA § 13-2-2 (4).' [Cit.]" *DeKalb County v. Rockdale Pipeline*, 189 Ga. App. 121, 123-124 (2) (375 SE2d 61) (1988). "Words in [a] . . . con-

tract must be given their usual, ordinary, and common meaning. OCGA § 13-2-2 (2). . . . 'It is the function of the court to construe the contract as written and not to make a new contract for the parties. (Cit.)' [Cit.]" *Bold Corp. v. Nat. Union Fire Ins. Co. &c.*, 216 Ga. App. 382, 383-384 (1) (454 SE2d 582) (1995). We are not authorized to "make an unambiguous contract ambiguous by the introduction of parol evidence." *Houston v. Jefferson Standard Life Ins. Co.*, 119 Ga. App. 729, 732 (168 SE2d 843) (1969).

We agree with GMI that there is no factual dispute as to whether the contract obligates GMI to provide 24-hour emergency CT Scan service. The clear and unambiguous terms of the contract provided that GMI would supply service on a shared basis with other hospitals; that there would be a schedule for use of the scanner; that the hospital was free to obtain emergency service elsewhere; and that there could be re-negotiation for continuous service if certain volumes were reached. Richard Smith's unrebutted affidavit supports this construction, and it cannot be logically maintained that under the circumstances of this case, "mutually agreed time schedule" can be construed to mean 24-hour emergency service. Furthermore, Dr. Rhodes' affidavit does not demonstrate the presence of a genuine issue of material fact but serves only to make this otherwise unambiguous contract ambiguous. See id. Accordingly, the trial court erred in failing to grant summary judgment to GMI on the question of GMI's obligation to provide CT Scan services.

2. In its answer to GMI's complaint, the hospital authority asserted, as a defense, that the person who signed the contracts on its behalf was without authority to bind the hospital authority and that the contracts were therefore unenforceable. GMI contends it was entitled to summary judgment on this issue because it submitted unrebutted evidence demonstrating that Timothy Thomas, the hospital's chief financial officer, was authorized to sign the contracts on behalf of the hospital authority. GMI also contends that the hospital authority ratified the contracts as a matter of law by accepting its services for 16 months of the 24-month contracts. We agree.

GMI concedes that there is no single document clearly stating that Thomas did or did not have authority to sign the contracts. However, GMI submitted an affidavit from the hospital authority board chairman which showed that the board was aware of Thomas's negotiations with GMI for CT Scans, mammograms, and sonograms for the hospital; that board policy permitted the hospital administrator or her designee to negotiate and execute routine contracts for the hospital; that the contracts at issue would be deemed routine if they mirrored previous agreements; that the board did not formally vote on contract approvals; that no one on the board objected to Thomas's negotiations or his execution of the contracts on their behalf; and that

during his service on the board, he never heard any board member contend that Thomas was without authority to sign contracts with GMI. GMI also submitted the affidavit of the hospital administrator at the time the contracts were executed which showed that the administrator designated Thomas to negotiate and execute the three contracts and that he did so with her knowledge and approval. Moreover, in his deposition, Thomas testified that the only difference between the contracts in question and previous contracts between the parties was the reduced rates he negotiated in the contracts at issue.

OCGA § 31-7-74 (a) provides in part that "[t]he [hospital] authority shall make rules and regulations for its governance and may delegate to one or more of its members, officers, agents, or employees such powers and duties as may be deemed necessary and proper." The evidence referenced above and the minutes from board meetings held during Thomas' negotiations and execution of the contracts demonstrate that the contracts were executed under a proper delegation of authority and were therefore binding. The hospital authority submitted no relevant evidence to the contrary. Moreover, the hospital authority obviously cannot seriously maintain that Thomas's actions in its behalf were not authorized and that it did not ratify the contracts after 16 months of performance because they failed to follow their own policies in approving the contracts. Even if Thomas had acted without authority, because the hospital authority failed to promptly rescind the contracts, its acceptance of GMI's services for 16 months would have constituted ratification of the contracts. See *Southern Motors &c. v. Krieger*, 86 Ga. App. 574 (1) (71 SE2d 884) (1952). Furthermore, Kuntz's termination of the contracts presupposed the hospital authority's ratification of the agreements and GMI's performance under their terms. Accordingly, the trial court also erred in denying GMI's motion for summary judgment regarding Thomas' authority to execute contracts on the hospital authority's behalf and the hospital authority's ratification of the contracts.

### Case No. A95A1172

3. In its first enumeration of error, the hospital authority contends that the contracts were invalid because Timothy Thomas executed them without authority and they were not approved by the hospital board; therefore, GMI cannot recover lost profits or revenue on the contracts. Because we have already addressed Thomas's authority to contract on the hospital authority's behalf and ratification of the contracts, we need only to address the hospital authority's contention that GMI is not entitled to recover lost revenue under the contracts.

" 'In order to prevail on a motion for summary judgment . . . a defendant-movant is required to pierce the allegations of the com-

plaint and to establish as a matter of law that the plaintiff could not recover under any theory fairly drawn from the pleadings and the evidence.' . . . [Cit.]" *Martin v. Dunwoody-Shallowford Partners,* 217 Ga. App. 559, 560 (2) (458 SE2d 388) (1995).

Relying on a series of cases involving municipal and county governments, the hospital authority contends that GMI's recovery is limited to the value of services rendered. Not only are these cases inapplicable to a hospital authority, but the hospital authority's argument incorrectly assumes that the contracts in question are invalid for one reason or another. We agree with GMI that while there may be limitations on cities and counties, there is no similar limitation in Georgia law on the abilities of hospital authorities to create binding contracts through ratification of contracts made by their agents. See OCGA §§ 31-7-74 (a) and 31-7-75 (3) and (18). The hospital authority has cited no authority which limits GMI to a quantum meruit recovery and therefore "has failed to make a prima facie showing that it is entitled to summary judgment as a matter of law." *Martin,* supra. Consequently, the trial court did not err in denying the hospital authority's motion on this ground.

4. Relying on *Alonso v. Hosp. Auth. of Henry County,* 175 Ga. App. 198 (332 SE2d 884) (1985), the hospital authority contends the trial court erred in failing to find that as a matter of law, under a "totality of circumstances test," it had "just cause" to terminate the contracts. The hospital authority argues it was justified in terminating the contracts because it suffered financial hardships while operating under the agreements due to changes in Medicare/Medicaid regulations and the unavailability of GMI's equipment on a full-time basis. In its appellate brief, the hospital authority makes the rather bold statement that "[i]t is clear in this case that the Hospital gained financially from terminating its arrangement with [GMI] through direct billing services from American Imaging Services . . . as well, it improved its quality of patient care by providing 24-hour service regarding the medical tests in question." However, even if in the interest of providing better patient care, the hospital authority was not justified in terminating the contracts purely because, in its judgment, the contracts proved to be financially detrimental or because it was able to strike a better deal with someone else. "If a firm contract can be terminated on such a basis with impunity then indeed is the basis of our industry and commerce on shifting sands. Perhaps the [hospital authority] here . . . made a bad bargain — one that was uneconomic for it. But such is the tuition in the school of hard knocks where lessons are learned that will be of incalculable value in determining the course of future policies and operations. If [the hospital authority] had desired an 'escape clause' in [its] contract so that [it] might terminate the agreement at will, it should have been included

as a part of the contract when it was made. Industry and commerce demand stability in contracts and business relationships and such we must have." *Gulbenkian v. Patcraft Mills*, 104 Ga. App. 102, 106 (3) (121 SE2d 179) (1961). Indeed, the hospital authority's reliance on *Alonso* is misplaced as that case involved the termination of an employment contract based on a "just cause" provision in the contract. The facts in *Alonso* showed that the contract between the hospital and its radiologist was financially detrimental to the hospital and that the radiologist refused to enter into a new agreement which would have been more favorable to the hospital and would not have caused him any financial detriment. However, neither the hospital's financial status, Medicare regulations nor the radiologist's lack of cooperation justified the termination of the contract. Instead, the court determined that the hospital authority was authorized to terminate the contract because the decision was based on the employee's "ability and fitness to discharge his responsibility as a key hospital staff member." *Alonso*, supra at 201.

The foregoing demonstrates that the trial court did not err in denying the hospital authority's motion for summary judgment on the question of the hospital authority's termination of the contracts.

5. In its order denying GMI's motion for summary judgment, the trial court stated that the contracts are not unconscionable under the circumstances of the case. The hospital authority contends the court erred in so ruling as a matter of law because GMI's profit margin was 94.7 percent.

"An unconscionable contract is 'such an agreement as no sane man not acting under a delusion would make and that no honest man would take advantage of.' [Cits.]" *R. L. Kimsey Cotton Co. v. Ferguson*, 233 Ga. 962, 966 (3) (214 SE2d 360) (1975). The hospital authority's bare assertion does not demonstrate that the contracts were so one-sided as to be deemed unconscionable. This argument is without merit.

*Judgment affirmed in Case No. A95A1172. Judgment reversed in Case No. A95A1171. Beasley, C. J., and Pope, P. J., concur.*

DECIDED DECEMBER 5, 1995 —
RECONSIDERATION DENIED DECEMBER 19, 1995 — 

*Moore & Mangum, Joab O. Mangum III*, for appellant.
*David G. Kopp*, for appellee.