IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 13, 2005 Session

## ROBIN E.O.S. CRASTER v. THRIFTY RENT-A-CAR SYSTEM, INC., et al.

**Direct Appeal from the Chancery Court for Knox County**
**No. 152025-2      Hon. Daryl Fansler, Chancellor**

_____

**No. E2004-01948-COA-R3-CV  - FILED SEPTEMBER 29, 2005**

_____

The parties filed Motions for Summary Judgments.  The Trial Court granted defendants' Motion which stated defendant was not a proper party and insurance policy issued to plaintiff did not cover plaintiff's damages.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and SHARON G. LEE, J., joined.

John O. Threadgill, Knoxville, Tennessee, for appellants.

Brent R. Watson, Knoxville, Tennessee, for appellee.

### OPINION

In this action, plaintiff, a citizen of England, filed a Complaint against Thrifty Rent-A-Car System, Inc., and others, alleging that she entered into a rental car agreement and insurance agreement with defendants while on vacation in the United States (in Georgia), and that after being involved in an accident in the rental car while in Tennessee, defendants failed to provide any insurance coverage.  She further alleged that her companion, Alison Ball, also entered into the same contractual relationship with and through Thrifty, and that Ball was driving the rental car when she negligently caused an accident which resulted in severe injuries to plaintiff.  Plaintiff alleged that through Thrifty, she chose to purchase liability insurance through Empire Fire & Marine Insurance Company, and supplemental liability insurance through Reliance Insurance Company, and Thrifty acted not only as a car rental agent, but also as an insurance agent.

She further alleged breach of contract, bad faith, and violations of the Georgia Fair Business Practices Act, and the Tennessee Consumer Protection Act. Further, that Thrifty was guilty of negligent and/or fraudulent misrepresentation and inducement to enter into the contract due to its misrepresentations regarding the insurance coverage. She attached the rental agreement and a purported copy of the supplemental liability insurance agreement as exhibits to the Complaint.

Thrifty answered, admitting that plaintiff entered into a rental car agreement, but that the agreement was with Thrifty's licensee, Courtesy Rentals, Inc, rather than Thrifty. Defendant denied or claimed no knowledge of the other allegations in the Complaint, and asserted the defenses of lack of jurisdiction, improper venue, failure to state a claim, and statute of limitations.[1]

Plaintiff then filed a Motion for Declaratory Judgment, asking the Court to construe the terms of the contract in question, and determine who were the proper parties to the Contract, along with a Motion for Partial Summary Judgment, asking the Court to rule that defendant was a party to the contract in question, that the Court had jurisdiction, and that the contract required defendant to indemnify Ball and/or provide benefits to plaintiff for her injuries.

Thrifty filed a response to plaintiff's Motion for Partial Summary Judgment, as well as its own Motion for Summary Judgment, and attached an Affidavit of James Nelson, who stated that he was president of Courtesy Rentals, Inc., which is a Georgia corporation, and that the transactions between plaintiff and Courtesy occurred in Georgia. He stated that Courtesy is a licensee of Thrifty, that Thrifty has no ownership in the licensee. He stated that Thrifty allowed Courtesy to use its name and reservation system in exchange for payment of a license fee.

He further stated that on July 10, 2000, Courtesy entered into a rental agreement with plaintiff, Alison Ball, Peter Holling, John Felstead, and Ruth Erlemann, but that Thrifty was not a party to the agreement. The rental agreement was attached as Exhibits, which consisted of the rental statement and the separate rental jacket. Nelson stated the renters were given a copy of both documents at the time the rental statement was signed, and that plaintiff initialed the portions of the contract indicating that she accepted PDW (physical damage waiver) and SLI (supplemental liability insurance) but declined PAI (personal accident insurance).

He pointed out that the first paragraph of the rental jacket states that the agreement is between the renter and an independent licensee of Thrifty, which is Courtesy, and he stated that Paragraph 10 of the rental jacket states that "SLI is subject to the other specific exclusions which are summarized on the separate SLI brochure which is available at the rental counter" Nelson stated that a true copy of the brochure was attached (noting that the terms "SLI" and "SLP" are used interchangeably), and was available at the time the rental agreement was signed.

Nelson further stated that Paragraph 10(A)(1) of the rental jacket excludes coverage for claims made for bodily injury if the claim is made by an authorized renter. Nelson stated that the

---

[1]Plaintiff dismissed the other defendants pursuant to Tenn. R. Civ. P. 41.01.

brochure states that bodily injury to the renter is not covered, as does the business auto liability policy issued by Reliance, which is referenced therein (and the endorsement page was attached to his statement). The rental jacket, states in paragraph 10 that "if I have initialed that I accept the optional SLI at the beginning of the rental, I am entitled to the following: A. Thrifty will protect Me against third-party liability claims arising out of the use or operation of the Car for (I) bodily injury or death of another (excluding any of My or Additional Renter's family members related by blood, marriage or adoption residing with Me or them) and; (ii) Property damage other than to the car." Paragraph 10(B) does state that the SLI is "subject to the other specific exclusions which are summarized on the separate SLI brochure which is available at the rental counter." The attached brochure states that all limitations/exclusions are contained in "the Business Auto Policy, the Basic Rental Contract and the Addendum." The brochure states that "SLP" does not provide coverage for "bodily injury" or "property damage" to the "Renter". The endorsement page of the business auto policy which was attached, states that bodily injury does not apply to any authorized driver.

Plaintiff filed a Response in Opposition to the Summary Judgment and attached her own affidavit, which stated that she and Ball entered into a rental agreement and insurance agreement with Thrifty, and purchased supplemental liability insurance as part of that agreement. She stated that at no time during the transaction did any employee there tell them that they were conducting business with Courtesy, and no document placed or displayed at the counter let them know that they were dealing with any entity other than Thrifty. Plaintiff stated that she was not provided any additional information other than the rental statement, and nothing else was presented or explained to them by the employees.

Plaintiff then filed a Motion for Default, stating that defendants had failed to respond to plaintiff's Request for Admissions within the requisite 30 days, and that subsequently, it should be deemed admitted that plaintiff and Ball entered into a supplemental liability insurance policy with defendant, that plaintiff was entitled to recover from defendant on the policy, and that defendant had knowingly withheld benefits, had acted in bad faith, and had made misrepresentations regarding the policy. Thrifty then filed a Counter-Complaint alleging that paragraphs 9 and 10 of the rental jacket state that plaintiffs as authorized renters agree to hold Thrifty harmless for all third party claims for bodily injury and any other losses. Plaintiff then filed a Motion for Summary Judgment, adopting the previously filed Motion for Partial Summary Judgment and a Motion for Declaratory Judgment, and all the attachments. Plaintiff also attached the deposition of Sayed Mansoor Fakhraie, who testified that he worked for a rental car company in Norcross, Georgia named All Rental, Incorporated, which his brother owned. He testified that he was the rental agent who waited on the "group of four from England" who came in to rent a mini-van, and that he explained to them that with international customers, usually their insurance policies would not cover them in the U.S., so they might want to consider taking out additional coverage, and they agreed. He testified that he had been doing rentals for 8-10 years, and was experienced in handling rental transactions.

Fakhraie testified that he offered three different types of insurance to them, one which covered the vehicle, one which was for injury to passengers in the car, and one which was for liability, and they chose the insurance for the car and third party liability, and were "comfortable with

what they had for their own personal injury and health. They declined that." He testified that he explained the liability insurance as "You're covered up to a million dollars in case there is liability in a lawsuit against you and we will cover that for you up to $1 million." He testified that they had to initial that they were accepting that, but there was just one premium, even though there were multiple drivers. He testified that he did not offer to show them the insurance policy, because the brochure was available on the counter. Further, that both he and All Rental got a commission for selling the SLI coverage.

Fakhraie further testified there was a problem with the credit card the renters were using, so once the transaction became a cash rental, they had to take the SLI, there was no option. Fakhraie testified that other insurance called PAI/PEP was also available, which would cover personal injury for the passengers, and he explained that to them, and they declined it. He testified that he gave them a rental jacket, as he did with every rental, and that no one ever asked to see the SLI brochure. Plaintiff also attached the deposition of James Michael Nelson, who testified that he was the sole shareholder of Courtesy Rentals, Inc. d/b/a Thrifty Car Rental in College Park, Georgia, a Georgia corporation. Nelson testified that he had owned the franchise for approximately 10 years.

Regarding the types of coverage available, Nelson explained that there was SLI, which covered liability to third parties, so that "if you run into somebody else's car, it would cover the car and the people in the car - in the other car." He explained that PAC covered the driver and passengers in the renter's car, but SLI did not. Further that PAC covered the medical expenses of people in the car, and he thought it would cover the liability of a driver to a passenger, but was not sure. However, the SLI would not cover the driver's liability to a passenger in the car.

Defendant then filed a Supplemental Motion for Summary Judgment, and attached the depositions of Nelson and Fakhraie, as well as Craster's deposition, interrogatory answers and Ball's request to admit answers. In plaintiff's deposition, she testified she was 57 years old, lived in Cambridge, England, and had been employed until December 2002. She identified the rental agreement she signed, and said she remembered reading part of it, but not all of it. She testified that she did not remember seeing a rental jacket, and did not remember the rental agreement being folded and placed in a rental jacket. She testified that even though the agreement referenced a rental jacket, she did not ask to see one, and that "jacket" was not an English word, and she was not familiar with a jacket in relation to paperwork. She testified at the time of the rental she was tired and hot and had to sit down, and her companions asked questions about Thrifty, but she did not remember the questions or answers. Plaintiff testified that she believed she had comprehensive coverage that would cover "anything that may happen to either you in your vehicle or to somebody else in their vehicle". She believed that she asked if the insurance was comprehensive, and was told that it was. She testified she could not remember for certain because of the accident, but she would usually ask that question as a matter of course.

She testified she did not ask questions regarding who owned that particular Thrifty franchise, because she thought "Thrifty was Thrifty, a big name and I thought that would be okay." She testified the rental agents were helpful, and could not remember whether they refused to provide

-4-

any requested information. She said she initialed the agreement as accepting PDW and SLI, but declined PAI/PEP, and she remembered that the agent explaining those to her, but she could not now remember what they were. She testified that if it had something to do with health insurance she would not have taken it, because she had taken out insurance for travel. She testified that her travel insurance had paid most of her medical expenses, and she thought she purchased comprehensive insurance, which meant that if she was injured as a passenger in the rental vehicle, it would be covered.

She could not remember whether there was an SLI brochure on the counter, and she could not remember any other documents or brochures concerning insurance on the night they rented the vehicle. She thought the insurance was being provided by Thrifty, and that she had never seen the rental jacket before her deposition. She further testified that Empire Insurance Company had paid $25,000.00 to settle their lawsuit.

Following arguments on the Motion for Summary Judgment, the Trial Court issued an Order on August 9, 2004, granting summary judgment to defendant, and further certified the Order as a final judgment pursuant to Tenn. R. Civ. P. 54.02, since defendant had a counter-claim pending.

The issue plaintiff presents on appeal is :

Did the Trial Court err in granting summary judgment for defendant rather than for the plaintiff?

An appeal from summary judgment is classified as a question of law and no presumption of correctness applies. Tenn. R. App. P. 13(d).

In this case, viewing the facts in the light most favorable to plaintiff, we still must confront the unavoidable fact that plaintiff admitted that she signed the rental agreement attached to the Complaint as Exhibit A, and relies on the same as her agreement with defendant. Plaintiff testified that she did not fully read the agreement before signing it, but this does not relieve her of the legal effect of the contract, as she acknowledges she signed the contract voluntarily, and was under no pressure or duress to accept. *See Dixon v. Manier*, 545 S.W.2d 948 (Tenn. Ct. App. 1976). The contract which plaintiff signed explicitly states that "By signature below, I acknowledge that I have read and agree to the terms and conditions, both printed and written, including Physical Damage Waiver, that appear on this rental statement and on the separate rental jacket." Plaintiff testified that she did not remember getting or reading the rental jacket, but also testified that others in her group dealt with this transaction in addition to her, and that at one point she had to sit down, leaving her companions to complete the transaction. She could not unequivocally state that the rental jacket was not provided, and testified that even though the rental jacket was specifically referenced

in the agreement she signed, she did not ask about it.[2]

The rental agreement demonstrates that plaintiff accepted the PDW and SLI by her initials, but declined PAI/PEP, which she admits. The rental jacket explains the PDW and SLI provisions, which are undisputedly the only provisions which plaintiff accepted.

Paragraph 10 of the rental jacket explains the SLI, or supplemental liability insurance coverage as: "Thrifty will protect Me against third-party liability claims arising out of the use or operation of the Car for (I) bodily injury or death of another (excluding any of My or Additional Renter's family members related by blood, marriage or adoption residing with Me or them) and; (ii) Property damage other than to the car."[3] Paragraph 10(B) goes on to state that the SLI is "subject to the other specific exclusions which are summarized on the separate SLI brochure which is available at the rental counter." The brochure expressly excludes coverage for bodily injury to a renter.

While plaintiff testified she did not see the brochure, it is specifically referenced in the rental jacket, which is undisputedly a part of the plaintiff's contract. It is well-settled in the jurisdiction that "when the language of a contract is plain, simple and unambiguous", "it is the function of a court to interpret and enforce contracts as they are written, notwithstanding they may contain terms which may be thought harsh and unjust. A court is not at liberty to make a new contract for parties who have spoken for themselves." *Wilkerson v. Williams*, 667 S.W.2d 72 (Tenn. Ct. App. 1983); *see also General Const. Contractors Ass'n., Inc., v. Greater St. Thomas Baptist Church*, 107 S.W.3d 513 (Tenn. Ct. App. 2002).[4]

We are constrained to enforce the unambiguous contract which plaintiff acknowledges she voluntarily signed, which as written, produces the result that plaintiff had no coverage for bodily injury because she was a renter. As the Trial Court stated in ruling from the bench, it is "an extremely strained argument that you can pluck one paragraph out of some document and claim that that is your contract without relying upon the other portions of it"

Finally, defendant argued in the Trial Court and this Court that Thrifty is not a proper party to this lawsuit because Thrifty was not a party to the contract. This point is moot since plaintiff did not establish a breach of contract claim in any event.

---

[2] Fakhraie, the rental agent who helped plaintiff and her companions, testified that he gave them a rental jacket, as he did with every rental.

[3] While the plaintiff claimed she had not seen the rental jacket, she attached paragraph 10 to her original Complaint as an exhibit, apparently relying on its terms..

[4] Incidentally, this rule applies in Georgia. *See Georgia Magnetic Imaging, Inc. v. Greene Co. Hospital Authority*, 466 S.E.2d 41 (Ga. Ct. App. 1995).

As to plaintiff's fraud claim, we conclude that she could not demonstrate that any untrue statements were made by a Thrifty representative (which is required to prove fraud/misrepresentation.) *See Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230 (Tenn. Ct. App. 1998)). Plaintiff testified that she could not remember the exact conversation or any representations that were made. Taking the facts in the light most favorable to plaintiff, she did testify that she thought she was getting "comprehensive" coverage, although she could not remember how the coverage was explained to her or the exact discussion, she simply thought she would have asked for that because she usually did. On the other hand, plaintiff also testified she did remember declining one kind of coverage because she thought it would be duplicative of her travel insurance. We conclude the plaintiff did not offer material evidence of any intentional misrepresentation that was made knowingly or recklessly that was false. *See Shahrdar*. The Trial Court properly granted summary judgment on the this claim as well.[5]

The Judgment of the Trial Court is affirmed and the cause remanded, with the cost of the appeal assessed to plaintiff, Robin Craster.

_____
HERSCHEL PICKENS FRANKS, P.J.

---

[5] Plaintiff also raised a claim in her Complaint that defendant violated the Tennessee Consumer Protection Act, but failed to argue this issue in her brief. A review of the statute demonstrates that the only act which plaintiff could be complaining of would be in the nature of a misrepresentation (*see* Tenn. Code Ann. §47-18-104), and for the reasons stated, this claim would be without merit.