A09A0831. RAINBOW USA, INC. v. CUMBERLAND MALL, LLC.

(688 SE2d 631)

BARNES, Judge.

Rainbow USA, Inc., appeals the grant of summary judgment to Cumberland Mall, LLC,[1] in its action seeking a declaratory judgment on the amount of rent owed under its lease. When the parties executed the lease, JC Penney, Rich's, Macy's, and Sears stores were all operating in the mall. Each of these stores operated as a retail store open to the general public under a single trade name and occupied at least 50,000 square feet of contiguous space in the Mall.

The lease between Rainbow and Cumberland Mall provided in Section 1.26 B, Operating Co-Tenancy:

> If during the Term, J C Penney or any two (2) anchors or their anchor store replacement cease to remain open and operating for business in substantially all of their existing space in the Shopping Center under a single trade name, or thirty percent (30%) or more of the gross leasable area of the enclosed Shopping Center, excluding anchor stores, is not open for business to the public, (either of the above conditions being referred to as an "Operating Failure"), then in such event Tenant shall have the right, notwithstanding anything to the contrary contained in ARTICLE 4 or elsewhere in this Lease, to pay to Landlord in lieu of Minimum Annual Rental and Percentage Rental and extra charges (except utilities) but in no event in excess of the Minimum Rental and Percentage Rental and extra charges (except utilities) otherwise payable under the Lease, an amount equal to six percent (6%) of Gross Sales for each and every month (the Substitute Rent), payable monthly, in arrears, within twenty (20) days following the end of each calender month, Tenant agreeing to give Landlord written notice of Tenant's intention to exercise this remedy; provided, however, that the Substitute Rent shall be effective as of the date the Operating Failure occurred. In addition, if

---

[1] The action was filed initially against U.K.-LASALLE, Inc., but we granted the appellee's motion to substitute parties after U.K.-LASALLE merged with another party to form Cumberland Mall, LLC.

after one (1) year following the date on which such Operating Failure shall have occurred, such Operating Failure shall not have been cured, Tenant shall have the right, prior to the remedying by Landlord of the Operating Failure, to terminate this Lease upon thirty (30) days written notice sent to Landlord and, upon a date which shall be thirty (30) days following the date of the notice, this Lease shall cease and terminate and Landlord and Tenant shall each be released from all further obligations accruing under this Lease; provided, however, that if the Operating Failure shall be continuing, Landlord shall send Tenant a notice (the "Vitiating Notice") that a comparable retail replacement anchor, the name of which shall be specified in the Vitiating Notice, shall open for the conduct of business in the premises previously occupied by the anchor named in Landlord's Vitiating Notice which has ceased to operate, then any notice sent by Tenant on account of the Operating Failure shall be void and of no force and effect, and this Lease shall continue upon all of its terms and conditions; provided further, however, that if the replacement anchor shall not open for the conduct of business within six (6) months following the date of Landlord's Vitiating Notice, Tenant shall have the right, to cancel and terminate this Lease by written notice sent to Landlord and, on the date which shall be sixty (60) days following the date of that notice, this Lease shall cease and terminate.

In 2003, Macy's closed its store and consolidated its operations in the space occupied by the Rich's store. Then, the JC Penney store ceased to operate in June 2005 and Cumberland Mall demolished the facility in which the JC Penney store had operated. This created an Operating Failure as defined in the lease. Exercising its right under the lease, Rainbow began paying Substitute Rent in June 2005.

In 2006 construction of a Costco Wholesale warehouse began. The facility in which Costco operates is a free-standing one-level building not physically attached to the Mall. The site plan provided by the parties shows that Costco's building is physically apart from the mall where Rainbow is located.

When Cumberland Mall sought to increase the amount of the rent to the level owed when JC Penney was operating, Rainbow objected, but later paid the increased rent under protest. Ultimately Rainbow filed this action. The parties filed cross-motions for summary judgment based upon a stipulation of facts. The trial court granted summary judgment to Cumberland Mall, without discussion, and denied Rainbow's motion.

Rainbow then filed this appeal in which it alleges the trial court erred by granting Cumberland Mall's motion for summary judgment and denying Rainbow's motion. For the reasons stated below, we reverse the trial court's grant of summary judgment to Cumberland Mall, LLC, reverse the award of attorney fees under Article 28 of the lease, and reverse the denial of Rainbow's motion for summary judgment. We direct the trial court to enter partial summary judgment in favor of Rainbow.

1. In Georgia,

> [t]he standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). When a trial court rules on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. On appeal of the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence.

(Citation and punctuation omitted.) *Overton Apparel v. Russell Corp.*, 264 Ga. App. 306, 307 (1) (590 SE2d 260) (2003). "The construction of the provisions of this lease, as with other contracts, is generally one for the court to determine as a matter of law." *Peachtree on Peachtree Investors, Ltd. v. Reed Drug Co.*, 251 Ga. 692, 694 (1) (308 SE2d 825) (1983).

> First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. [Cit.]

*Schwartz v. Harris Waste Management Group*, 237 Ga. App. 656, 660 (2) (516 SE2d 371) (1999). As a general rule the provisions of a lease will be construed against the lessor. *Farm Supply Co. of Albany v. Cook*, 116 Ga. App. 814, 816 (1) (159 SE2d 128) (1967).

2. Rainbow first contends that the trial court erred by granting summary judgment to Cumberland Mall because Costco is not operating in substantially all of the space formerly occupied by JC

STATE LAW LIBRARY

Penney. It further contends that this dispute relates to only two sentences in Section 1.26 B, Operating Co-Tenancy, the first providing for the payment of Substitute Rent and the second addressing the tenant's right to terminate the lease and the application of the landlord's Vitiating Notice. Rainbow contends, however, that only the sentence providing for the payment of Substitute Rent actually applies. Rainbow contends the second sentence would only apply if it attempted to terminate its lease, and it did not. We cannot agree that the second sentence of the section has no application in this case. Although seemingly connected only to the sentence relating to the termination of the lease by the tenant, the section provides that a proper Vitiating Notice causes *"any notice sent by Tenant on account of the Operating Failure* [to] be void and of no force and effect." Thus, by its terms it applies to "any notice" sent by Rainbow, and any notice would obviously include a "written notice of [Rainbow's] intention to exercise the" remedy of paying Substitute Rent, as provided in the first sentence of Section 1.26 B of the lease.

3. Cumberland Mall does not dispute that an Operating Failure occurred that entitled Rainbow to pay the reduced rent, but it contends that it had the right under Section 1.26 B to "cure" the Operating Failure with a Vitiating Notice and require Rainbow to pay the full rent. Although we agree with Cumberland Mall's general proposition, i.e., that it had the right under the lease to "cure" the Operating Failure with a Vitiating Notice, we do not agree that it was entitled to do so in this instance.

The relevant part of the lease provides that the notice must identify a "comparable retail replacement anchor, the name of which shall be specified in the Vitiating Notice, [that] shall open for the conduct of business in the premises previously occupied by the anchor named in Landlord's Vitiating Notice which has ceased to operate. . . ." Cumberland Mall contends that, notwithstanding the fact that Costco does not occupy the same space as JC Penney did formerly, it occupies the same premises, because the JC Penney ground lease "encompassed not just the area where JC Penney's structure stood, but also the majority of the surrounding parking lot" of the shopping center.

(a) For the Vitiating Notice to be effective two conditions must be satisfied: (1) a comparable retail replacement anchor shall be specified and (2) the replacement anchor shall open for the conduct of business in the premises previously occupied by the anchor which has ceased to operate. Therefore, we must address whether Costco is a "comparable retail replacement anchor" that has opened "for the conduct of business in the premises previously occupied by" JC Penney. In doing so we note that the section of the lease concerning taxes defines "an 'anchor' [as] any retail store whether occupied or

vacant, and whether owned or leased, which leases or occupies 50,000 square feet or more of contiguous space in the Shopping Center and operating under a single trade name in the entire premises" and

> an "out-parcel" [as] any operation, land, building, store or business whether occupied or vacant and whether owned or leased, that is not an anchor or variety or specialty store and that does not have an entrance accessible to customers of the Shopping Center from the interior of an enclosed mall area.

Further, according to the lease, Shopping Center "includes all buildings, land, improvements, additions, extensions and deletions which may be made from time to time" and when the lease distinguishes between the shopping mall area of the Shopping Center from the surrounding land, it does so by using the word "enclosed," e.g., "enclosed mall portion of the Shopping Center." Consequently, that Costco is not operating within the enclosed mall portion of the Shopping Center does not mean that it cannot be a "comparable retail replacement anchor" for the JC Penney anchor. Nevertheless, because determining whether Costco is comparable to JC Penney in this instance would require us to weigh the evidence and reach a factual conclusion, such a determination is beyond our power to make. *Fletcher v. Amax, Inc.*, 160 Ga. App. 692, 695 (288 SE2d 49) (1981).

(b) This does not end our inquiry because we must also consider the second part of the Vitiating Notice, i.e., whether Costco opened for business "in the premises previously occupied by" JC Penney. Although Cumberland Mall offers a broad definition of "premises" that would include not just the area where JC Penney actually operated, but also the surrounding parking lots, we find such a broad definition inconsistent with the terms of the lease[2] in the record.

The lease uses the term "Leased Premises" and for Rainbow identifies a specific location in the Shopping Center: "264 Cumberland Mall, containing approximately 3989 square feet of floor area and approximately 30' lineal feet of frontage." Moreover, the definition of an anchor in the lease is "any retail store whether occupied or vacant, and whether owned or leased, which leases or occupies 50,000 square feet or more of contiguous space in the Shopping

---

[2] In this regard, although the lease in the record is that between Rainbow and Cumberland Mall, the parties have not suggested that the terms in this lease differ in any material respect relevant to the issues on appeal from that between JC Penney and Cumberland Mall.

Center and operating under a single trade name in the entire premises.'' This definition does not include parking areas. Article 1 (a), "Leased Premises, Term and Use," reinforces this point:

> Landlord leases to Tenant and Tenant takes from Landlord in consideration of the covenants and agreements in the Lease, the premises ("Leased Premises") being that portion of the building measured to the center of common walls and the outside faces of exterior walls, on the drawings attached to this Lease and made a part of this Lease as "Exhibit A" and "Exhibit A-1." The Lease Premises shall include corridors and passageways for the exclusive use of the Leased Premises, columns, stairs, elevators and any construction or equipment located in the Leased Premises, as well as pipes, conduits, electrical wires and drainage lines that directly serve the Leased Premises.

Article 10 of the Lease, Condition of Premises, which refers to the tenant taking possession of the premises, and Article 17, Joint Use Areas, are also inconsistent with Cumberland Mall's definition of premises. Article 10 clearly contemplates a tenant taking possession of the portion of the shopping center it leases, and Article 17 identifies "all parking areas, parking facilities, approaches, streets, sidewalks, malls, driveways," as Joint Use Areas, not as premises.

As a general rule, words used in one sense in one part of a contract are deemed to have been used in the same sense in another part of the instrument. *Tudor v. American Employers Ins. Co.*, 121 Ga. App. 240, 243-244 (2) (173 SE2d 403) (1970). Therefore, as "premises" is used throughout the lease to refer to the particular retail store leased by the particular tenant and not to parking areas, the definition of premises that Cumberland Mall would have us adopt is inconsistent with the lease. This reading of the lease is reinforced by language in the first sentence of Section 1.26 B that an Operating Failure occurs when the anchor stores "cease to remain open and operating for business *in substantially all of their existing space* in the Shopping Center." OCGA § 13-2-2 (4) ("The construction of a contract which will uphold the contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part.").

Under the facts stipulated by the parties, even assuming that Costco is a comparable retail replacement for JC Penney, Cumberland Mall cannot satisfy the second condition because Costco did not open for business in the premises previously occupied by JC Penney, as premises is defined in this lease. Therefore, Cumberland Mall was not authorized to send an effective Vitiating Notice under Section

1.26 B of the lease. "It is the function of the court to construe the contract as written and not to make a new contract for the parties." (Citation and punctuation omitted.) *Georgia Magnetic Imaging v. Greene County Hosp. Auth.*, 219 Ga. App. 502, 504 (1) (466 SE2d 41) (1995).

Accordingly, the trial court's grant of summary judgment to Cumberland Mall and the award of attorney fees based thereon must be reversed.

4. Because Costco did not "open for the conduct of business in the premises previously occupied by the anchor named in Landlord's Vitiating Notice which has ceased to operate," the trial court erred by denying Rainbow's motion for partial summary judgment. Therefore the case is remanded to the trial court with direction to grant partial summary judgment to Rainbow on its entitlement to pay substitute rent in accordance with the lease, to determine the amount of rent paid under protest and make an appropriate award of that rent, and to determine whether Rainbow is entitled to an award of attorney fees and costs of litigation.

*Judgment reversed and case remanded with direction. Miller, C. J., and Andrews, P. J., concur.*

DECIDED SEPTEMBER 21, 2009 —
RECONSIDERATION DENIED DECEMBER 16, 2009 — 

*Drew, Eckl & Farnham, Joseph C. Chancey,* for appellant.
*Andre & Blaustein, Luke A. Kill,* for appellee.

